STATE OF WEST VIRGINIA,

EX REL. ALPHA E. WILSON

*v.*

ROY TRUBY, STATE SUPERINTENDENT OF
EDUCATION FOR WEST VIRGINIA, AND
THE WEST VIRGINIA STATE BOARD OF EDUCATION

(No. 15118)

Decided June 16, 1981.

*Cecil, Pearson & Barth and J. David Cecil* for relator.

*Chauncey H. Browning,* Attorney General, *Victor A. Barone,* Deputy Attorney General, for respondents.

McHUGH, JUSTICE:

This action is before this Court upon the petition of Alpha E. Wilson filed herein on December 16, 1980, for a writ of mandamus, upon the January 29, 1981, order of this Court commanding and directing the respondents, Roy Truby, State Superintendent of Education for West Virginia, and the West Virginia State Board of Education to show cause why a writ of mandamus should not be awarded against them, upon the answer of the respondents, the demurrer of the petitioner to the answer, all other matters of record and upon the memoranda of law and argument before this Court.

In this action, the petitioner is aggrieved by his failure to receive an interview for the position of Assistant State Superintendent of Schools, Bureau of Learning Systems.

The petitioner has been employed by the West Virginia Department of Education for approximately seven years. At the time he filed his petition in this Court, he was classified as a Coordinator of Educational Innovation and Support in the Bureau of Services and Federal Assistance, a subdivision of the State Department of Education.[1]

In August 1980, respondent Truby, State Superintendent of Schools, announced by memorandum that applications would be received to fill the position of Assistant State Superintendent of Schools, Bureau of Learning Systems, West Virginia Department of Education. The petitioner applied for this vacant position by letter dated September 15, 1980. The petitioner's resume was attached to his letter of application.

Also by letter dated September 15, 1980, the respondent, State Superintendent, acknowledged the petitioner's application and informed the petitioner that a screening committee would review applications and interview candidates for the position. The respondent, State Superintendent, further stated that Deputy State Superinten-

---

[1] Subsequent to the filing of the petition, the petitioner was reclassified and became Assistant Director, Bureau of Services and Federal Assistance, State Department of Education.

dent Tom McNeel was the chairman of the screening committee.[2]

By letter dated October 15, 1980, from the respondent, State Superintendent, the petitioner was informed that over fifty-five applications were submitted for the vacant position and that the petitioner had not been selected for an interview.

The petitioner, by letter dated October 20, 1980, to the respondent, State Superintendent, requested reasons in writing as to why he had not been selected for an interview. In response, the petitioner was informed that inasmuch as the respondent, State Superintendent, did not participate in the screening committee's selection of candidates to be interviewed for the vacant position, the Superintendent could not provide reasons why the petitioner was not selected to be interviewed. The respondent, State Superintendent, suggested that the petitioner contact screening committee chairman McNeel concerning the matter.

The petitioner by letters dated October 21, 1980, and October 23, 1980, to the respondent, State Superintendent, again requested reasons in writing for his failure to receive an interview. Moreover, the petitioner conferred with McNeel on October 28, 1980.

By letter dated October 29, 1980, to William M. Smith, President of the West Virginia Board of Education, the petitioner requested that the State Board of Education, direct the respondent, State Superintendent, to provide the petitioner with reasons in writing for his failure to receive an interview for the vacant position. In support of this request, the petitioner referred to West Virginia Board of Education Policy No. 5300, concerning school personnel relations.

---

[2] It should be noted that the petitioner alleges in the petition that he gave testimony detrimental to McNeel in September 1978, in Randolph County, West Virginia, in a proceeding not related to this matter. *See, Burks v. McNeel,* 264 S.E.2d 651 (W. Va. 1980).

Nevertheless, in the note of argument in support of his demurrer, the petitioner states that the membership of the screening committee in this action is not "relevant to the legal issues." (Note of argument in support of the petitioner's demurrer–at 2.)

By letter dated October 31, 1980, the State Superintendent responded to the petitioner's letter of October 29, 1980. In the letter, the State Superintendent outlined the procedures followed by the screening committee and stated that the petitioner's claim was not a "grievable matter."

By letter dated November 10, 1980, the petitioner, by counsel, requested a hearing before the West Virginia Board of Education. This request was denied.

The petitioner filed his petition for a writ of mandamus with this Court on December 16, 1980.

In this action, the petitioner does not contend that he was improperly denied a promotion to the position of Assistant State Superintendent of Schools, Bureau of Learning Systems. In this regard, the petitioner recognizes that a degree of subjectivity was involved in filling the position. The petitioner contests, however, his disqualification for the position at the inital stage, the selecting of applicants for an interview, which stage, the petitioner asserts, should have been the most objective step in the application process. Accordingly, the petitioner seeks information concerning his current job performance in order to improve his chances for future promotions within the West Virginia Department of Education.

Specifically, the petitioner requests a hearing before the West Virginia Board of Education, or for a written evaluation of his job performance with reasons for the denial of an interview for the vacant position. The petitioner relies upon West Virginia Board of Education Policy No. 5300 requiring evaluations with respect to the promotion, demotion, transfer or termination of employment of school personnel. The petitioner contends that Policy No. 5300 applies to West Virginia Department of Education personnel as well as to county school personnel. In this regard, the petitioner contends that the West Virginia Department of Education Employee Handbook indicates an intention that Policy No. 5300 is to apply to state as well as county employees.

On the other hand, the respondents contend that West Virginia Board of Education Policy No. 5300 applies to

county school personnel only and not to personnel of the West Virginia Department of Education. Specifically, the respondents contend that personnel of the West Virginia Department of Education are covered by the Employee Handbook rather than by Policy No. 5300. Furthermore, the respondents assert that the petitioner had no property interest in the vacant position, and that inasmuch as the vacant position and the current position of the petitioner are in different bureaus of the Department of Education, a promotion of the petitioner is not involved. Moreover, the respondents assert that in filling the vacant position, the value of the petitioner as an employee of the West Virginia Department of Education was not brought into question and, that the petitioner is not entitled to search the thought process of each member of the screening committee. Finally, the respondents assert that many applications for the vacant position were received and that the administrative burden would be too great to supply reasons why each applicant was not selected for an interview.

On September 8, 1972, the respondent, West Virginia Board of Education, adopted Policy No. 5300 concerning school personnel relations and including provisions for employee performance evaluations. Paragraph 6 of this policy provides as follows:

(a) Every employee is entitled to know how well he is performing his job, and should be offered the opportunity of open and honest evaluation of his performance on a regular basis. Any decision concerning promotion, demotion, transfer or termination of employment should be based upon such evaluation, and not upon factors extraneous thereto. Every employee is entitled to the opportunity of improving his job performance, prior to the terminating or transferring of his services, and can only do so with assistance of regular evaluation.

(b) Every employee is entitled to "due process" in matters affecting his employment, transfer, demotion or promotion.

The petitioner relies upon the above provision and others contained in Policy No. 5300 in asserting his right to receive reasons for his failure to be selected for an interview for the vacant position.

This Court, in several cases, has reviewed the applicability and meaning of West Virginia Board of Education Policy No. 5300. *Mason County Board of Education v. State Superintendent of Schools*, 274 S.E.2d 435 (W. Va. 1980); *State ex rel. Hawkins v. Tyler County Board of Education*, 275 S.E.2d 908 (W. Va. 1980); *Trimboli v. Board of Education*, 254 S.E.2d 561 (W. Va. 1979); *Powell v. Brown*, 238 S.E.2d 220 (W. Va. 1977).

In *Mason County Board of Education, supra*, a high school principal was discharged by the Mason County Board of Education for incompetence. This Court, however, reinstated the principal to his position. Specifically, this Court held that the Board violated the principal's rights under Policy No. 5300 when it discharged him without a prior evaluation of his job performance and without providing him a period for improvement.

In *Hawkins, supra*, the Tyler County Board of Education, in 1977, attempted to transfer a teacher for her refusal to assume certain extracurricular coaching activities. This Court held that such activities were not part of the teacher's contract of employment. However, this Court remanded the case to the circuit court to determine whether the coaching activities interfered with the teacher's classroom instructional efficiency.

In *Hawkins*, this Court concluded that the Tyler County Board of Education did not act arbitrarily in not providing the teacher with an evaluation and improvement period pursuant to Policy No. 5300. The basis of this ruling was that no allegations of misconduct or incompetency were asserted against the teacher (275 S.E.2d at 916).

In *Trimboli, supra*, the Wayne County Board of Education and Wayne County School Superintendent attempted to transfer Trimboli from his position as Director of Federal Programs to the position of teacher.

Subsequent to administrative proceedings, Trimboli, upon appeal, was denied relief in the Circuit Court of Wayne County. This Court, however, reversed and remanded, holding the transfer of Trimboli to be improper if such transfer did not comply with Policy No. 5300.

In *Trimboli*, there was no evidence in the record before this Court that Trimboli's job performance had been evaluated or that he had been given an opportunity to improve. Accordingly, this Court held that if, in fact, the Wayne County Board of Education had failed to follow the evaluation procedure provided by Policy No. 5300, the transfer of Trimboli, if for reasons correctable, would be prohibited.

Justice Richard Neely, in *Trimboli*, dissented, stating essentially that Policy No. 5300 clearly does not impose a condition precedent to the discharge or transfer of board of education administrative personnel.

In *Powell v. Brown, supra*, this Court held that a probationary teacher, whose employment contract was not renewed, had the right to learn the reasons for such nonrenewal by utilizing the grievance procedure adopted by the Ritchie County Board of Education. This Court's decision in *Powell* was based upon the fact that the Ritchie County grievance procedure was adopted pursuant to State Board of Education Policy No. 5300 which policy provides for employee evaluations and the application of due process.

In addition to West Virginia Board of Education Policy No. 5300, a separate document made part of the record before this Court is entitled the West Virginia Department of Education Employee Handbook. This Employee Handbook, revised in 1975, indicates that it was submitted to the West Virginia Board of Education for final approval.[3] On

---

[3] W. Va. Code, 18-2-5, provides the general rule making authority of the West Virginia Board of Education.

October 27, 1978, the Employee Handbook was filed in the Office of the Secretary of State of West Virginia.[4]

Part I of the Employee Handbook is entitled General Rules and Regulations, and the first paragraph thereof provides as follows: "All employees of the West Virginia Department of Education, both professional staff and office personnel, unless otherwise provided for by the State Superintendent, are subject to the general rules and regulations."

Part III of the Employee Handbook is entitled Professional Staff, and the first paragraph thereof provides as follows:

> Applicants for professional positions will be interviewed and recommended by the appropriate Bureau Assistant Superintendent. Final decision regarding approvals will be made by the State Superintendent. Other assistant superintendents or appropriate professional personnel may be consulted. Professional appointments are confirmed by the State Board of Education, upon recommendation by the State Superintendent of Schools.

Part III of the Employee Handbook further provides, in part, as follows: "An annual evaluation including a conference between the employee and his immediate supervisor shall be conducted."

It is clear from the record in this action that the petitioner met the objective criteria for the vacant position of Assistant State Superintendent of Schools, Bureau of Learning Systems. The qualifications for the position were described in the August 18, 1980, memorandum from the respondent, State Superintendent, announcing the vacancy. The qualifications were as follows:

> Applicants must hold a Masters Degree in education and at least eight years of educational experience, including teaching and/or administra-

---

[4] This Court, in *Teller v. McCoy*, 253 S.E.2d 114, 120 (W.Va. 1978) took judicial notice that certain regulations were filed in the Office of the Secretary of State of West Virginia.

tive experience in the public schools. Additional desirable qualifications are (1) administrative experience at the county or local level, (2) the doctorate in education, and (3) teaching experience at university or college level.

The resume of the petitioner states that he received his Bachelor of Science degree in 1960, his Master of Arts degree in 1961 and his Doctorate of Education degree in 1972. With respect to the eight year requirement of educational experience, it is undisputed in the record that the petitioner has been an employee of the West Virginia State Board of Education for seven years. As indicated in the petitioner's resume, the petitioner had several years of educational experience prior to this seven year period. The petitioner's resume further indicates that the petitioner has teaching experience at the high school and college levels and has administrative experience.

In *State ex rel. McLendon v. Morton*, 249 S.E.2d 919 (W.Va. 1978), the relator contended that her right to due process was violated when her application for tenure at Parkersburg Community College was denied. No reasons were given for the denial of tenure (249 S.E.2d at 925). The relator contended that she met the objective criteria for tenure established by the West Virginia Board of Regents and, consequently, was entitled to a due process hearing before tenure could be denied. An evaluation process concerning tenure was established by the Community College.

This Court, in *McLendon*, held in Syl. pt. 3 as follows:

A teacher who has satisfied the objective eligibility standards for tenure adopted by a State college has a sufficient entitlement so that he cannot be denied tenure on the issue of his competency without some procedural due process.

This Court further held in *McLendon* that the relator was entitled to notice of the reasons why tenure was denied and a hearing with an opportunity to submit evidence.

As this Court concluded in *McLendon*, the petitioner in this action met the objective criteria for the vacant position

of Assistant State Superintendent of Schools, Bureau of Learning Systems. Consequently, as in *McLendon,* the petitioner in this action had more than a unilateral expectation with respect to the selection of candidates to be interviewed.[5]

An administrative body must abide by the remedies and procedures it properly establishes to conduct its affairs. *State ex rel. Hawkins v. Tyler County Board of Education, supra,* at 912; Syl. pt. 1, *Trimboli v. Board of Education, supra;* Syl. pt. 1, *Powell v. Brown, supra.* Moreover, school personnel regulations and laws are to be strictly construed in favor of the employee. Syl. pt. 1, *Wayne County Board of Education v. Tooley,* No. 14885 (W.Va. April 3, 1981); *Morgan v. Pizzino,* 256 S.E.2d 592 (W.Va. 1979).

By its approval of the Employee Handbook, and by the filing of the same in the Office of the Secretary of State, the West Virginia Board of Education elected to provide employees of the West Virginia Department of Education specific benefits and responsibilities. In so doing, the Board, in providing interviews for Department employees applying for professional positions within the Department, has gone beyond those rights which are constitutionally required. Nevertheless, the Board must follow its own Employee Handbook. As stated in *Powell v. Brown, supra:*

> Here, then the grievance procedure extends rights beyond those constitutionally required and

---

[5] As this Court stated in *McLendon:*

We conclude that Professor McLendon had more than a unilateral expectation of tenure. With her rank of Assistant Professor, six years of teaching service and fulltime employment in academic teaching, she met the eligibility criteria to make application for tenure. This does not mean, however, that she was automatically entitled to obtain tenure status. Both the Board's Bulletin and the College's regulations indicate that teaching competency is a further criterion for obtaining tenure. Competency involves an evaluation of a teacher's total professional skills. It is the basic substantive issue once the objective eligibility requirements are met.
249 S.E.2d at 925.

there is excellent authority to rely upon in requiring the board to afford the rights to Powell.

. . . .

We need to go no further than to hold the county superintendent and school board to the notions of fair play and due process which they have chosen to accord employees under their own regulations.

238 S.E.2d at 222.

Accordingly, we hold that pursuant to Part III of the West Virginia Department of Education Employee Handbook, applicants with the Department who have met the objective eligibility criteria for a vacant professional position are entitled to an interview for such position. In limiting our interpretation of the interview provision to those applicants who have met the objective eligibility criteria for the vacancy, we are attempting to limit the administrative burden of granting interviews to many applicants. Essentially, however, by our holding we are simply giving effect to the Employee Handbook.[6]

As the Employee Handbook provides, and as the petitioner requests in his petition, this Court requires that the petitioner be evaluated with reasons given why he initially did not receive an interview for the vacant position.

A writ of mandamus is therefore granted commanding and directing the respondents to, as soon as practicable, conduct an evaluation of the petitioner, therein providing

---

[6] The Employee Handbook provides that the appropriate bureau assistant superintendent is to conduct the interview of applicants within the Department of Education for professional positions. However, it was a bureau assistant superintendent position that the petitioner was seeking. Inasmuch as the West Virginia Board of Education, through the Employee Handbook, provided for interviews of Department applicants for those professional positions subordinate to a bureau assistant superintendent, the West Virginia Board of Education must certainly have intended that interviews be conducted of Department employees for the higher position, i.e., bureau assistant superintendent.

him with reasons why he initially did not receive an interview for the vacant position.

*Writ granted.*

NEELY, JUSTICE, *dissenting*

I dissent on the grounds that every personnel decision made by school authorities cannot be reviewed in the courts. This Court has stretched the law by turning Regulation 5300 into a constitution-like scripture—an empty vessel into which judges may pour whatsoever they wish. Now, however, the Court goes farther and makes a handbook designed as an easy reference guide for new employees into a binding statement of policy. How much farther can we go? Soon, off-the-cuff remarks by the superintendent in the coffee lounge will be capable of grounding a cause of action.

The petitioner in this case was applying for a policymaking position. He was well-known to the persons with whom he would be working and, obviously, was not considered a suitable person for membership on the management team. Possibly his personal qualities are such that he would make a superb policymaker; furthermore, his idea of proper policy may be entirely correct from an objective point of view and the persons who declined him promotion may be entirely benighted. Nonetheless, policymakers are entitled to have people under them who will carry out orders, work towards a common goal, and "get along well with others." That was the basis of my dissent in *Trimboli v. Board of Education,* 163 W.Va. 1, 254 S.E.2d 561 (1979) and it is the basis of this dissent. Where the courts determine the people to be hired and fired in the school systems, then the courts are responsible for the ultimate success of education. Accountability implies the right in the accountable officer to surround himself or herself with policymaking personnel of his or her own choosing.

MILLER, JUSTICE, dissenting:

I believe the majority has confused the facts and the law in this case in an attempt to give petitioner some chimerical relief. Petitioner only seeks to know the reason or reasons he was not accorded a personal interview in regard to his

application for the position of Assistant State Superintendent of Schools, Bureau of Learning Systems (West Virginia Department of Education).

The majority fails to mention that in the State Superintendent's letter of October 31, 1980, to petitioner, he was given the reason for his failure to be interviewed. In this letter, petitioner was informed of the process utilized by the screening committee in initially reviewing applications for the position. That process reduced the large pool of applicants to those the committee considered most qualified and they received a personal interview.

The essence of the selection process had each of the six-member screening committee, after review of the resumes submitted, list their opinion of the ten most qualified applicants. Any applicant who received only one vote or less was eliminated from further consideration and, therefore, received no personal interview.[1] I see no reason why this does not constitute a sufficient explanation to the petitioner of why he was not accorded a personal interview.

Aside from this critical factual error, the majority spends a considerable portion of its opinion discussing our cases decided under West Virginia Board of Education Policy No. 5300. It is clear to me that this policy does not apply to the Office of the West Virginia State Superintendent but is designed solely for local boards of education and the personnel hired by them. While the petitioner in his brief

---

[1] The pertinent portion of the October 31, 1980, letter sent by the State Superintendent to the petitioner is:

"Following a review of all applications, each committee member was to submit to the chairman his or her top 10 choices by the end of the work day on September 29, 1980. According to procedure adopted by the committee on September 26, 1980, the Chairman would then compile a listing of names submitted, omitting those persons who had not been named by a single member of the committee or who had been named only once. That listing was returned to committee members on October 6, 1980 and indentified 14 candidates who had received two or more votes by committee members in the initial screening. Eight other candidates and yourself received only one vote in the initial screening and, therefore, were omitted from further consideration. The remaining candidates received no votes."

192

claims he was entitled to the benefit of Policy No. 5300, the majority does not assert that Policy No. 5300 is applicable. Our Policy No. 5300 cases are clearly confined to the actions of the county boards of education.[2] Therefore, it is a mystery to me why these cases are even cited.

As the majority's third Syllabus Point reveals, their holding is based on language in Part III of the West Virginia Department of Education Employee Handbook entitled, "Professional Staff." This section provides in pertinent part:

> "*Applicants for professional positions will be interviewed and recommended by the appropriate Bureau Assistant Superintendent.* Final decision regarding approvals will be made by the State Superintendent. Other assistant superintendents or appropriate professional personnel may be consulted. Professional appointments are confirmed by the State Board of Education, upon recommendation by the State Superintendent of Schools." (Emphasis added)

The majority in effect holds that the first sentence of the foregoing paragraph requires that petitioner be granted an interview. The position for which the petitioner was applying—Assistant Superintendent of Schools, Bureau of Learning Systems—is the very position with which the regulation requires the interview to be held. With the interviewing office vacant, it is clear that the Handbook provision is not applicable. The respondent correctly points out that the foregoing regulation is applicable to positions under the level of Assistant Superintendent. Applicants for vacancies in these lower positions are customarily interviewed by the appropriate Bureau Assistant Superintendent. However, where, as here, the vacancy is for a Bureau Assistant Superintendent, interviews for the position are conducted by a special screening committee.

---

[2] The introductory statement to Policy No. 5300 confines its applicability to "the development of harmonious and cooperative relationships between county boards of education and school employees."

The majority glosses over this point in its Note 6 by asserting that because "the Employee Handbook ... provided for interviews of Department applicants for those professional positions subordinate to a bureau assistant superintendent, the West Virginia Board of Education must certainly have intended that interviews be conducted ... for the higher position, i.e. bureau assistant superintendent." This statement completely ignores the rule of statutory construction that a regulation or statute which expressly mentions one class or subject matter impliedly excludes all others. *Johnson v. Continental Casualty Company*, 157 W. Va. 572, 201 S.E.2d 292 (1973); *State ex rel. City of Charleston v. Hutchinson*, 154 W. Va. 585, 176 S.E.2d 691 (1970).

The majority also misreads *State ex rel. McLendon v. Morton*, 162 W. Va. 431, 249 S.E.2d 919 (1978), which dealt with the right to a hearing on the failure to grant tenure to a teacher who had met all of the objective tenure requirements. Tenure is a completely different creature than an interview for a prospective employee. No court of which I am aware has ever held that there is some due process "entitlement" to a job interview. Today's majority opinion will certainly spawn much confusion in our law and will place on school administrators the bewildering task of trying to determine what their responsibilities are in the routine administrative decision of selecting from a pool of candidates the person deemed most qualified for the job.