294 S.E.2d 189

**Faylee K. WILT**

v.

**Jackson L. FLANIGAN, Supt., etc., et al., Berkeley County Board of Education.**

No. 15271.

Supreme Court of Appeals of West Virginia.

July 8, 1982.

Neely, J., dissented.

Askin & Burke and D. Michael Burke, Martinsburg, for appellant.

Rice, Hannis & Douglas and Richard L. Douglas, Martinsburg, for appellees.

McGRAW, Justice:

Faylee Wilt appeals from a decision of the Circuit Court of Berkeley County affirming the action of the Berkeley County Board of Education (also affirmed by the State Superintendent of Schools) which refused to rehire the appellant, pursuant to W.Va.Code § 18A–2–8 [1969], and refused to grant her a continuing contract of employment. The appellant contends that her

performance as a teacher was not evaluated openly and honestly as required by West Virginia Board of Education Policy No. 5300(6)(a).[1] After a thorough review of the record, we find that appellant's due process rights were infringed because the clear mandate of 5300(6)(a), when strictly interpreted in favor of school personnel, was not followed in this instance. We recite the facts in detail because the violation of 5300(6)(a) that occurred below resulted from a combination of actions that, when viewed in totality, prevented the appellant from knowing how well she was performing as a teacher and prevented her from being openly and fairly evaluated.

Beginning with the 1977–78 school term, the appellant was assigned by the Berkeley County Board of Education to be a reading teacher at Hedgesville Middle School. All teachers hired pursuant to W.Va.Code § 18A–2–2 [1969][2] must first complete a three-year probationary period before being offered a continuing contract of employment. In order for a probationary teacher to be granted a continuing contract of employment, he or she must be recommended for reemployment annually for each of those three years by the school's principal, who gives his written recommendation to the superintendent, who in turn makes a recommendation to the county

1. West Virginia Board of Education Policy No. 5300(6)(a) provides:

    (a) Every employee is entitled to know how well he is performing his job, and should be offered the opportunity of open and honest evaluation of his performance on a regular basis. Any decision concerning promotion, demotion, transfer or termination of employment should be based upon such evaluation, and not upon factors extraneous thereto. Every employee is entitled to the opportunity of improving his job performance prior to the terminating or transferring of his services, and can only do so with assistance of regular evaluation.

2. W.Va.Code § 18A–2–2 [1969] provides in part:

    Before entering upon their duties, all teachers shall execute a contract with their boards of education, which contract shall state the salary to be paid and shall be in the form prescribed by the state superintendent of schools. Every such contract shall be signed by the teacher and by the president and secretary of the board of education, and when so signed shall be filed, together with the certificate of the teacher, by the secretary of the office of the board.

    A teacher's contract, under this section, shall be for a term of not less than one nor more than three years; and if, after three years of such employment, the teacher who holds a professional certificate, based on at least a bachelor's degree, has met the qualifications for the same, and the board of education enter into a new contract of employment, it shall be a continuing contract: Provided, that any teacher holding a valid certificate with less than a bachelor's degree who is employed in a county beyond the said three-year probationary period shall upon qualifying for said professional certificate based upon a bachelor's degree, if reemployed, be granted continuing contract status. The continuing contract of any teacher shall remain in full force and effect except as modified by mutual consent of the school board and the teacher, unless and until terminated (1) by a majority vote of the full membership of the board before April first of the then current year, after written notice, served upon the teacher, return receipt requested, stating cause or causes, and an opportunity to be heard at a meeting of the board prior to the board's action thereon, or (2) by written resignation of the teacher before that date. Such termination shall take effect at the close of the school year in which the contract is so terminated: Provided, however, that the contract may be terminated at any time by mutual consent of the school board and the teacher, and that this section shall not affect the powers of the school board to suspend or dismiss a principal or teacher pursuant to section eight [§ 18A–2–8] of this article: Provided further, that a continuing contract for any teacher holding a certificate valid for more than one year and in full force and effect during the school year one thousand nine hundred sixty-two and one thousand nine hundred sixty-three shall remain in full force and effect: And provided further, that a continuing contract shall not operate to prevent a teacher's dismissal based upon the lack of need for the teacher's services pursuant to the provisions of law relating to the allocation to teachers and pupil-teacher ratios. But in case of such dismissal, the teachers so dismissed shall be placed upon a preferred list in the order of their length of service with that board, and no teacher shall be employed by the board until each qualified teacher upon the preferred list, in order, shall have been offered the opportunity for reemployment: Provided, that he has not accepted a teaching position elsewhere. Such reemployment shall be upon a teacher's preexisting continuing contract and shall have the same effect as though the contract had been suspended during the time the teacher was not employed.

board of education, which ultimately makes a decision on the matter.[3]

To aid principals and supervisors in the evaluation of a teacher's job performance, standardized observation and evaluation forms are used. The observation form is a checklist divided into five general areas—Planning & Observing, Physical Environment, Instructional Method, Atmosphere for Learning for the Teacher and for the Students—with more specific concerns under each heading. A principal or supervisor uses this form when observing a teacher in the classroom. A checkmark in the "Yes" column indicates that the teacher meets or exceeds acceptable standards in that area. A checkmark in the "No" column indicates that the teacher does not meet acceptable standards in that area. A checkmark in the third column means that the teacher was not observed in that particular area.

The evaluation form is a checklist that is filled out annually by the principal for each teacher. This form is sent along with the principal's recommendation regarding further employment to the superintendent. The evaluation form is divided into four general areas—Professional Characteristics, Teaching Technique, Classroom Management and Personal Characteristics—again with more specific matters listed under each general heading. A checkmark is either placed in a column marked "Strong," "Satisfactory" or "Needs Improvement."

The appellant's evaluation form for the 1977–78 school term, completed by Gary Greenfield, the principal of Hedgesville Middle School, listed three specific areas, all having to do with classroom discipline and management, in which the appellant

needed to improve. The appellant was found to be either satisfactory or strong in the 31 other areas evaluated. Based on Greenfield's evaluation and recommendation for reemployment, the Berkeley County Board of Education agreed to rehire the appellant to teach the following year.

On February 14, 1979, Greenfield completed his 1978–79 evaluation form for the appellant, in which he indicated that the appellant was either strong or satisfactory in all areas covered in the form and found no areas where she needed to improve. Based on this evaluation and Greenfield's recommendation for reemployment, the Berkeley County Board of Education hired the appellant to complete her final probationary year.

On April 25, 1979, after the evaluation and recommendation for reemployment had already been sent in for that year, the appellant had a conference with Greenfield and Donna Woods, the assistant principal, concerning problems the administration felt the appellant was having with managing and disciplining the students in her classes. The appellant was sent a letter on that same date in which Greenfield spelled out 12 problem areas. Greenfield labelled his letter as a "Written Warning notice" and further stated that "unless things improve dramatically ... I will not be able to recommend you for continued employment or tenure beyond the 1979–80 school term."

The appellant was observed in the classroom on October 9, 1979, by Greenfield. On this occasion, Greenfield found that the appellant had met or exceeded acceptable standards in 13 areas, failed to meet acceptable standards in 21 areas, was in between or average in 7 areas and was not observed in 2 areas.

---

3. W.Va.Code § 18A–2–9 [1975], provides in part:

The principal may submit recommendations to the superintendent regarding the appointment, assignment, promotion, transfer and dismissal of all personnel assigned to the school or schools under said principal's control. Such recommendation shall be submitted in writing as prescribed by the superintendent.

W.Va.Code § 18A–2–1 [1969], provides:

The employment of professional personnel shall be made by the board only upon nomi-

nation and recommendation of the superintendent. In case the board refuses to employ any or all of the persons nominated, the superintendent shall nominate others and submit the same to the board at such time as the board may direct. All personnel so nominated and recommended for employment and for subsequent assignment shall meet the certification, licensing, training, and other eligibility classifications as may be required by provisions of this chapter and by state board regulation.

Greenfield observed the appellant again on November 5, 1979. Her total this time was much better, with Greenfield indicating 42 acceptable, 4 not acceptable and 1 not observed. Greenfield wrote a letter to the appellant that day, which has since been lost, that said, according to the testimony below, that things had gone better at that observation.

On February 4, 1980, the appellant requested a conference with Greenfield to discuss Greenfield's practice of sometimes listening into her classroom over the public address system and reprimanding the students over the speakers. The appellant objected to this practice, explaining that she felt it weakened her position in the classroom. The conference lasted nearly four class periods. The appellant also asked Greenfield if he planned to recommend her for reemployment for the following year. Greenfield stated that at that time he would not make a positive recommendation and informed the appellant that she had two options—One, continue her present performance as a teacher, in which case he would not recommend her for further employment or two, avoid the embarrassment of being fired by resigning. Before the meeting was over, Greenfield handed the appellant a resignation form.

On or about February 12, 1980, the appellant went to Greenfield's office and requested grievance forms. She explained to him that she did not intend to resign and planned to file a grievance against Greenfield to review his recommendation.

On February 13, 1980, Greenfield conducted his third and final observation of the appellant in her classroom. In this observation, he noted that the appellant met or exceeded acceptable standards in 20 areas, failed to meet or exceed acceptable standards in 18 areas, was in between or average in 7 areas and was not observed in 2 areas. This observation was significantly more negative than the previous one done on November 5, 1979. Greenfield's evaluation of the appellant was completed on February 14, 1980. In this evaluation, Greenfield found the appellant to be strong in 6 areas, satisfactory in 10 areas, but needing improvement in 18 areas, quite a significant change from the previous year's evaluation where Greenfield concluded that the appellant did not need to improve in any areas. The appellant refused to sign the evaluation, stating that she wanted to make a written response. This written response was given to Greenfield on February 18, 1980.

On February 15, 1980, prior to receiving the appellant's response to the evaluation, Greenfield wrote a letter to John Bowers, Assistant Superintendent of Schools, explaining that he would not recommend the appellant for continuing employment because of her inability to manage and control her classroom. By a letter dated April 22, 1980, from Donald Anderson, Secretary for the Berkeley County Board of Education, the appellant was informed that she would not be rehired. The appellant requested a statement detailing the reasons why she was not going to be rehired and also requested a hearing. Anderson wrote to the appellant again on May 5, 1980, and explained that the reasons for not rehiring her were: 1) inefficiency of classroom management, control and discipline; 2) unsatisfactory evaluation for present school year; and 3) failure to communicate and cooperate with the supervisory staff. After the May 22, 1980 hearing that was held pursuant to W.Va.Code § 18A-2-8a [1977] [4] before the Berkeley County Board

---

4. W.Va.Code § 18A-2-8a [1977], provides:

The superintendent at a meeting of the board on or before the first Monday in May of each year shall provide in writing to the board a list of all probationary teachers that he recommends to be rehired for the next ensuing school year. The board shall act upon the superintendent's recommendations at that meeting in accordance with section one [§ 18A-2-1] of this article. The board at this same meeting shall also act upon the retention of other probationary employees as provided in sections four and five [§§ 18A-2-4; repealed; and 18A-2-5] of this article. Any such probationary teacher or other probationary employee who is not rehired by the board at that meeting shall be notified in writing, by certified mail, return receipt requested, to such persons' last known addresses within ten days following said board meeting, of their not having been rehired or not having been recommended for rehiring.

of Education, the board concluded that there were valid reasons for not recommending the appellant for reemployment. This decision was later affirmed by the State Superintendent of Schools and the Circuit Court of Berkeley County.

In syllabus point three of *Mason County Board of Education v. State Supt. of Schools,* 165 W.Va. 732, 274 S.E.2d 435 (1981), we held:

> The procedures specified in West Virginia Board of Education Policy No. 5300(6)(a) must be followed in every proceeding under W.Va.Code 18A–2–8 [1969] for the dismissal of a school employee on the ground of incompetency.

Since the appellant was refused reemployment under W.Va.Code § 18A–2–8 [1969], it was mandatory for the Berkeley County Board of Education to ensure that the guidelines enumerated in 5300(6)(a) were followed in order for the board's decision to be valid.

We stated in syllabus point one of *Morgan v. Pizzino,* 163 W.Va. 454, 256 S.E.2d 592 (1979), that: "School personnel regulations and laws are to be strictly construed in favor of the employee." The provisions of 5300(6)(a) must therefore be strictly construed in favor of the appellant to ensure that she received the full guarantee of protection intended to be encompassed by the policy promulgated by the West Virginia Board of Education.

In *Trimboli v. Board of Education of the County of Wayne,* 163 W.Va. 1, 254 S.E.2d 561 (1979), the first case in which we applied and interpreted 5300(6)(a), we stated in syllabus point three:

> Any probationary teacher who receives notice that he has not been recommended for rehiring or other probationary employee who has not been reemployed may within ten days after receiving the written notice request a statement of the reasons for not having been rehired and may request a hearing before the board. Such hearing shall be held at the next regularly scheduled board of education meeting or a special meeting of the board called within thirty days of the request for hearing. At the hearing, the reasons for the nonrehiring must be shown.

Failure by any board of education to follow the evaluation procedure in West Virginia Board of Education Policy No. 5300(6)(a) prohibits such board from discharging, demoting or transferring an employee for reasons having to do with prior misconduct or incompetency that has not been called to the attention of the employee through evaluation, and which is correctable.

The portion of 5300(6)(a) relevant to the present case provides: "Every employee is entitled to know how well he is performing his job, and should be offered the opportunity of open and honest evaluation of his performance on a regular basis." This provision of 5300(6)(a) affords school employees some measure of job protection by requiring that school employees be properly evaluated and informed with regard to job performance. *See Trimboli, supra,* 163 W.Va. at 9, 254 S.E.2d at 566.

Here, we are presented with a borderline case, where the facts do not conclusively demonstrate a violation of 5300(6)(a). However, in construing 5300(6)(a) strictly in favor of the appellant, we find that the 1979–80 evaluation completed by Greenfield lacked the openness and honesty required by 5300(6)(a).

First, we examine what the appellant reasonably should have known about the administration's views regarding her job performance, as reflected by the evaluations, observations, letters and conferences. The evaluations completed by Greenfield for the appellant during her first two years were positive, with the appellant having only three areas marked by Greenfield in which she needed to improve after the first year, and no areas for improvement after the second.[5] At the con-

---

5. At the hearing before the Berkeley County Board of Education, when asked about these two evaluations, Greenfield replied:

> Well, the first year most beginning teachers have difficulties of some sort or another. They like to be popular and that gets them into trouble real fast and also Mrs. Wilt was pregnant the first year which I think contributed to part of her problem and trying to be a halfway decent humane person, I did not want to wipe her out totally the first year or second year.

For an evaluation to properly inform the school employee about his or her job performance, it

ference held on April 25, 1979, Greenfield and Woods should have given the appellant notice that the administration did not feel she was doing an adequate job in disciplining and controlling her students, if indeed such was the case. The October 9, 1979, observation of her class, which was generally negative, should have let the appellant know that she was still having problems.

The November 5, 1979, observation, however, was considerably more positive. When this observation is combined with the letter Greenfield wrote, in which he generally commented on her improvement, the appellant could reasonably have concluded that she actually was improving.

The turnabout in her job performance evaluation by Greenfield appears to have begun with the February 4, 1980 conference, where the appellant was told she could either be embarrassed by not being reemployed or resign. At that time, Greenfield told the appellant that he would not recommend her for reemployment, even though his latest observation was quite positive and there had been no other observation or conference between the time of the November 5, 1979 observation, and the lengthy conference held on February 4, 1980.

The appellant's request for grievance forms to be filed against Greenfield was followed up the very next day by Greenfield making his third and final classroom observation, as he was required to do in order to properly document his recommendation not to rehire, pursuant to Berkeley County File GBI-R [1975].[6] Doubt is cast upon the validity of this third observation and the evaluation completed the next day because: 1) the observation took place the day after the appellant had informed Greenfield that she was not going to resign and was going to file a grievance against him; 2) during the February 4, 1979 conference, it appeared that Greenfield had already decided not to recommend the appellant for reemployment; 3) the evaluation completed for the 1979–80 school year dramatically increased the areas where the appellant needed to improve from zero in the 1978–79 evaluation to 18 in the last evaluation; and 4) the third observation appears to have been more of a formality needed to comply with Berkeley County File GBI-R, rather than an open and fair observation. As a result of the combination of the actions and factors listed, with particular attention being paid to the timing of the various events, we conclude that the third observation completed on February 13, 1980, and the negative annual evaluation completed the following day, were not the result of an open and fair evaluation of the appellant's performance as a teacher.

■ This finding is fatal to the validity of the decision made by the Berkeley County Board of Education because the third year evaluation was one of the reasons listed by the board for not rehiring the

---

must be as accurate and truthful as the evaluator can make it. Otherwise a teacher or school employee will not know how his or her job performance is actually viewed by the administrator and also will not know how he or she can improve.

We find this statement by Greenfield to be disturbing because it indicates that the evaluations of the appellant for the first two years may not have been done openly and honestly, as required by 5300(6)(a). These evaluations and observations are very subjective in nature because the areas intended to be measured cannot be objectively quantified. If these evaluations and observations were simply paperwork cranked out to feed the hungry bureaucrat, then we would not have spent so much time discussing them in this opinion. However, as evidenced by the facts of this case, a person's very livelihood can depend on where the evaluator places his checkmark on the form.

We would hope that in future cases, administrators, supervisors and principals will fully realize the importance of observations and evaluations and understand the significance of 5300(6)(a) in this regard.

**6.** Berkeley County File GBI–R [1975] reads, in part:

Documentation based on 3 or more classroom visits by the principal shall accompany the completed Evaluation Form submitted to the Associate Superintendent for Personnel for any teacher receiving an undesirable evaluation.

This procedure had to be followed in the present case because, as we stated in syllabus point one of *Powell v. Brown*, 160 W.Va. 723, 238 S.E.2d 220 (1977), "An administrative body must abide by the remedies and procedures it properly establishes to conduct its affairs."

appellant. A cloud was cast upon the appellant's due process rights and we must remove this cloud. Because the Berkeley County Board of Education failed to comply with policy number 5300(6)(a), the decision not to reemploy the appellant for the following year is invalid. We therefore order that the appellant be reinstated to her former position and be given an open and fair opportunity to prove her competency as a teacher.

For the foregoing reasons the decision of the Circuit Court of Berkeley County is reversed, and the case is remanded for proceedings consistent with this opinion.

Reversed and remanded.