341 S.E.2d 685

**Lacy SMITH**

v.

**The BOARD OF EDUCATION OF the COUNTY OF LOGAN, etc., et al.**

**No. 16761.**

Supreme Court of Appeals of West Virginia.

Dec. 17, 1985.

Dissenting Opinion Dec. 19, 1985.

Rehearing Denied April 4, 1986.

---

Robert T. Noone, Bradley J. Pyles, Crandall, Pyles & Crandall, Logan, for appellant.

Rober L. Perry, Pros. Atty., Logan, for appellees.

McGRAW, Justice:

This is an appeal from an order of the Circuit Court of Logan County entered on June 11, 1985. The appellant herein, by petition for a writ of certiorai, sought review of a decision of the Logan County Board of Education dismissing the appellant from his position as head football coach at Logan High School. The petition was submitted for decision on the basis of certain stipulated facts and supplemental testimony taken before the circuit court. The circuit court subsequently upheld the action of the Board and dismissed the petition. For the reasons that follow, we reverse the decision of the circuit court.

The material facts in this case are undisputed. The appellant, Lacy L. Smith, has been employed by the Logan County Board of Education (hereinafter "the Board") as a teacher since 1943. Since 1961, his teaching assignment has been with Logan High School.

Additionally, the appellant has served as head football coach at Logan High School for five years, from 1980 through 1985.[1] During the first four of those years, there was no written contract with respect to the appellant's coaching duties. Pursuant to recently enacted West Virginia Code § 18A–4–16 (1984 Replacement Vol.),[2] which, *inter alia*, requires the use of separate written contracts (independent of the teaching contract) for extracurricular assignments, the Board and the appellant entered into a written contract for his coaching assignment for the 1984–85 school year. He was paid for his coaching duties all five years at the standard county rate for head coaches of one month's additional salary plus eight hundred dollars.

On February 28, 1985, the Board voted not to renew the appellant's coaching contract for the 1985–86 school year.[3] No

prior notice was given to the appellant concerning this action. It appears that he first learned of the action after it happened, in the local newspaper. One month later, by letter dated March 27, 1985, the county superintendent officially advised the appellant that the Board had dismissed him.[4] No explanation for the action was given. In summary, the appellant received no advance notice of any proposed dismissal or nonrenewal, and no statement of reasons for the decision either prior to or subsequent to the Board's action.

Additionally, the record indicates that the appellant had never been reprimanded or otherwise disciplined for any reason prior to the decision of the Board. Furthermore, the Board did not present, at the circuit court hearing below, any prior written warnings or evaluations concerning the appellant's performance under his coaching contract. To the contrary, the record indicates that no evaluations were done, and that the appellant had never been advised of any deficiencies in his job performance or been given the opportunity to correct any perceived problems prior to the Board's action.[5]

1. Prior to racial integration of the schools, the appellant served as head coach for all sports at Aracoma High School, one of Logan County's black high schools. Following integration, he was transferred to Logan High School. In addition to teaching, he served as an assistant football coach at Logan for several years. When the head football coach position became vacant on several occasions, he applied but was passed over in favor of other applicants. Eventually, Mr. Smith filed a racial discrimination complaint with the West Virginia Human Rights Commission, which ultimately ruled in his favor. This ruling, subsequently affirmed by the Logan County Circuit Court, concluded that the Board had discriminated against the appellant due to his race in repeatedly refusing to appoint him to the head coach position. The Board complied with the circuit court's order and appointed him head coach in 1980.

2. West Virginia Code § 18A–4–16 was passed by the legislature April 11, 1981, and became effective ninety days from passage. 1981 W.Va. Acts 370. This provision was substantially amended the following year, and has remained unchanged following those adjustments. 1982 W.Va. Acts 246.

3. The minutes of the Board's February 28 meeting reflect that their intended action was to not

renew the appellant's coaching contract once the 1984–85 contract expired. However, the county school superintendent and others apparently considered the action to constitute a summary dismissal. The superintendent's notification letter to the appellant, dated March 27, 1985, informed him that the Board voted "to dismiss you as head football coach." On the same day, the locks on the appellant's coaching office and other athletic facilities were changed and the appellant was not provided with keys until after the hearing on this contract action before the circuit court on May 13, 1985. The circuit court concluded that the Board's action was not a dismissal, but a decision to allow the current contract to expire without renewal. Apparently, the appellant was paid under the contract until its expiration on June 30, 1985.

4. *See* footnote 2, *supra.*

5. Along these lines we note that, although not included in the record submitted to this Court, the parties to this action entered into a number of stipulations before the circuit court. Stipulations pertinent to the issues presented in this appeal, cited in the appellant's (petitioner's) brief and undisputed by the appellee (respondent) state as follows:

11. The respondents do not assert that the petitioner has been guilty of any misconduct

The appellant assigns several points of error to the circuit court's decision upholding the action of the Board. The essence of most of these assignments is that the circuit court erred in concluding that the procedural protections afforded under certain constitutional, statutory, and school policy provisions were not applicable to the appellant's extracurricular contract. Additionally, the appellant maintains that, irrespective of the applicability of these provisions, the circuit court erred in determining that the Board's action was supported by the evidence and not an arbitrary and capricious decision.

At the heart of the dispute in the instant case is West Virginia Code § 18A–4–16 (1984 Replacement Vol.). This recently enacted statute provides in subsection (1) that "assignment of teachers and service personnel to extracurricular assignments shall be made only by mutual agreement of the employee and the superintendent...." Subsection (4) further provides that the "employee's contract of employment [i.e.

that would be grounds for dismissal of the petitioner from either his teaching or coaching position pursuant to *West Virginia Code* § 18A–2–8.

12. If the action taken with respect to the petitioner's coaching position is considered a transfer and reassignment under *West Virginia Code* § 18A–2–7, the respondents do not assert that the petitioner was transferred for any misconduct, incompetence, or fault on the part of the petitioner.

13. The respondents have not followed the requirements of Policy No. 5300 of the State Board of Education with respect to the dismissal or transfer of the petitioner in that his performance as a coach has not been evaluated by any competent professional, he has not been advised of any shortcomings, and he has never been given any opportunity to improve any alleged deficiencies in his job performance.

14. The respondents have not followed the procedural requirements of either *West Virginia Code* § 18A–2–7 or 18A–2–8, in that the petitioner was not notified in advance of the proposed action of the Board or of any recommendation by the Superintendent that he be dismissed or transferred from his coaching position, he was not notified of any reasons or grounds for such proposed action, and he was not given any opportunity for a hearing before the Board on February 28, 1985.
The circuit court's findings of fact follow these stipulations.

regular teaching or service contract] shall be separate from the extracurricular assignment agreement provided for in this section and shall not be conditioned upon the employee's acceptance or continuance of any extracurricular assignment proposed by the superintendent...." [6]

The Board's position in the instant case, found persuasive by the circuit court below, is that this "separate contract" statute manifests a legislative intent that coaching and other extracurricular positions are not to be subject to the procedural rights afforded under regular teaching and service contracts with regard to dismissal or transfer. We disagree.

No part of West Virginia Code § 18A–4–16 (1984 Replacement Vol.), indicates that the legislature intended to exempt those persons assuming duty for extracurricular activities from the protections generally attached to all other school personnel positions. To the contrary, this statute was obviously enacted in response to this Court's decision in *State ex rel. Hawkins v.*

6. West Virginia Code § 18A–4–16 (1984 Replacement Vol.), in its entirety, provides:

(1) The assignment of teachers and service personnel to extracurricular assignments shall be made only by mutual agreement of the employee and the superintendent, or designated representative, subject to board approval. Extracurricular duties shall mean, but not be limited to, any activities that occur at times other than regularly scheduled working hours, which include the instructing, coaching, chaperoning, escorting, providing support services or caring for the needs of students, and which occur on a regularly scheduled basis.

(2) The employee and the superintendent, or a designated representative, subject to board approval, shall mutually agree upon the maximum number of hours of extracurricular assignment in each school year for each extracurricular assignment.

(3) The terms and conditions of the agreement between the employee and the board of education shall be in writing and signed by both parties.

(4) An employee's contract of employment shall be separate from the extracurricular assignment agreement provided for in this section and shall not be conditioned upon the employee's acceptance or continuance of any extracurricular assignment proposed by the superintendent, a designated representative, or the board.

*Tyler County Board of Education,* 166 W.Va. 363, 275 S.E.2d 908 (1980). The issues presented in *Hawkins* highlighted the sometimes burdensome expectations placed upon those teachers who are also qualified to coach. Nothing in the "separate contract" statute operates to deprive teacher-coaches of their procedural employment rights. The statute's intended purpose was to grant them *additional* protection by mandating that school boards could not assign teachers to coaching duties without their express consent, and more importantly, could not condition their teaching employment upon acceptance or continuation of coaching duties.

 "School personnel regulations and laws are to be strictly construed in favor of the employee." Syl., *Hedrick v. Board of Education,* 175 W.Va. 148, 332 S.E.2d 109 (1985); Syl. pt. 2, *Wren v. McDowell Coun-* *ty Board of Education,* 174 W.Va. 484, 327 S.E.2d 464 (1985); Syl. pt. 2, *Wilt v. Flanigan,* 170 W.Va. 385, 294 S.E.2d 189 (1982); Syl. pt. 2, *State ex rel. Wilson v. Truby,* 167 W.Va. 179, 281 S.E.2d 231 (1981); Syl. pt. 1, *Wayne County Board of Education v. Tooley,* 166 W.Va. 685, 276 S.E.2d 826 (1981); Syl. pt. 1, *Morgan v. Pizzino,* 163 W.Va. 454, 256 S.E.2d 592 (1979). The procedural requirements mandated under West Virginia Code § 18A-2-7 (1984 Replacement Vol.)[7] and West Virginia Code § 18A-2-8 (Supp.1985),[8] clearly apply, by the unqualified terms used therein, to all school personnel positions. Accordingly, it follows that school board actions relating to contracts entered into pursuant to West Virginia Code § 18A-4-16 (1984 Replacement Vol.) are not exempt from such requirements.

 Next, it must be determined what procedural requirements are applicable to

7. West Virginia Code § 18A-2-7 (1984 Replacement Vol.) provides in full:

> The superintendent, subject only to approval of the board, shall have authority to assign, transfer, promote, demote or suspend school personnel and to recommend their dismissal pursuant to provisions of this chapter. However, an employee shall be notified in writing by the superintendent on or before the first Monday in April if he is being considered for transfer or to be transferred. Any teacher or employee who desires to protest such proposed transfer may request in writing a statement of the reasons for the proposed transfer. Such statement of reasons shall be delivered to the teacher or employee within ten days of the receipt of the request. Within ten days of the receipt of the statement of the reasons, the teacher or employee may make written demand upon the superintendent for a hearing on the proposed transfer before the county board of education. The hearing on the proposed transfer shall be held on or before the first Monday in May. At the hearing, the reasons for the proposed transfer must be shown.
>
> The superintendent at a meeting of the board on or before the first Monday in May, shall furnish in writing to the board a list of teachers and other employees to be considered for transfer and subsequent assignment for the next ensuing school year. All other teachers and employees not so listed shall be considered as reassigned to the positions or jobs held at the time of this meeting. The list of those recommended for transfer shall be included in the minute record of such meeting and all those so listed shall be notified in writing, which notice shall be deliv- ered in writing, by certified mail, return receipt requested, to such persons' last known addressed within ten days following said board meeting, of their having been so recommended for transfer and subsequent assignment and the reasons therefor. The superintendent's authority to suspend school personnel shall be temporary only pending a hearing upon charges filed by the superintendent with the board of education and such period of suspension shall not exceed thirty days unless extended by order of the board.

> The provisions of this section respecting hearings upon notice of transfer shall not be applicable in emergency situations where the school building becomes damaged or destroyed through an unforeseeable act and which act necessitates a transfer of such school personnel because of the aforementioned condition of the building.

8. West Virginia Code § 18A-2-8 (Supp.1985) provides in full:

> Notwithstanding any other provisions of law, a board may suspend or dismiss any person in its employment at any time for: Immorality, incompetency, cruelty, insubordination, intemperance or willful neglect of duty, but the charges shall be stated in writing served upon the employee within two days of presentation of said charges to the board. The employee so affected shall be given an opportunity, within five days of receiving such written notice, to request, in writing, a level four hearing and appeals pursuant to provisions of article twenty-nine [§ 18-29-1 et seq.], chapter eighteen of the code of West Virginia, one thousand nine hundred thirty-one, as amended.

the appellant's case. The State Constitution places supervision of the public schools upon the State Board of Education, and designates the State Superintendent as the "chief school officer" with such powers and duties as may be prescribed by law. West Virginia Constitution, art. XII, § 2; *see also* West Virginia Code § 18–3–3 (1984 Replacement Vol.); *Jones v. Board of Education*, 170 W.Va. 310, 294 S.E.2d 113, 114 (1982). In this regard, the State Superintendent is charged by statute with the authority to interpret the laws and regulations pertaining to schools. *See* West Virginia Code § 18–3–6 (1984 Replacement Vol.). Additionally, under former grievance procedures the State Superintendent was the ultimate administrative arbiter of disputes between local boards and their employees.[9]

The State Superintendent has consistently held that a school board's refusal to renew a teacher's coaching position must be considered a transfer subject to the procedural protections of West Virginia Code § 18A–2–7 (1984 Replacement Vol.). *See, e.g., Hosaflook v. Nestor*, (State Superintendent of Schools Decision, May 14, 1985); *Smith v. Frazier*, (State Superintendent of Schools Decision, June 1, 1984).[10] The Superintendent has determined that failure to follow these procedures when choosing not to renew a coaching contract will result in automatic reassignment to the same position for the following year under the same terms and conditions of the current contract. "Interpretations of statutes by bodies charged with their administration are given great weight unless clearly erroneous." Syl. pt. 4, *Security National Bank & Trust Company v. First W. Va. Bancorp, Inc.*, 166 W.Va. 775, 277 S.E.2d 613 (1981), *appeal dismissed*, 454 U.S. 1131, 102 S.Ct. 986, 71 L.Ed.2d 284 (1982). *See*

---

**9.** The grievance procedure for school employees enacted by the 1985 legislature extricates the State Superintendent from general employee-local board disputes. *See* West Virginia Code § 18–29–1 *et seq.* (Supp.1985). Opinions rendered by the Superintendent prior to this new procedure nevertheless remain as persuasive authority.

**10.** Additionally, we note that the appellant raises the question of the applicability of State School Board Policy 5300 to his case. Policy 5300, subsection (6) provides:

(a) *Every employee* is entitled to know how well he is performing his job, and should be offered the opportunity of open and honest evaluation of his performance on a regular basis. *Any decision* concerning promotion, demotion, transfer or termination of employment should be based upon such evaluation, and not upon factors extraneous thereto. Every employee is entitled to the opportunity of improving his job performance, prior to the terminating or transferring of his services, and can only do so with assistance of regular evaluation.

(b) Every employee is entitled to "due process" in matters affecting his employment, transfer, demotion or promotion. (emphasis added.)

The State Superintendent, in the administrative decisions cited in the text above, appropriately determined that these evaluation procedures were applicable to coaching positions. The all-inclusive language of Policy 5300(6), promulgated under the authority of West Virginia Code § 18–2–5 (1984 Replacement Vol.), lends itself to no other interpretation.

We do acknowledge that at first blush it may seem counterintuitive to apply the critical evaluation procedures of Policy 5300(6)(a) to coaching endeavors. However, one must keep in mind that "athletics is an important vehicle for communication with and instruction of children." *State ex rel. Hawkins v. Tyler County Board of Education*, 166 W.Va. at 377, 275 S.E.2d at 917 (Neely, J., dissenting). Such evaluations, of course, would be misdirected if they dwelt upon win-loss records and game tactics. The intended purpose of Policy 5300 evaluations, whether they involve teaching or extracurricular duties, is to encourage improvement of school personnel skills which, in turn, will benefit the students. Accordingly, evaluations which critique a coach's communication skills and discipline practices, as well as the emphasis (or lack of) upon sportsman-like conduct, teamwork and other desirable human traits which are valuable to students on or off the playing field, would serve the intended purpose well.

In Syllabus Point 3 of *Trimboli v. Board of Education*, 163 W.Va. 1, 254 S.E.2d 561 (1979), we held that:

Failure by any board of education to follow the evaluation procedure in West Virginia Board of Education Policy No. 5300(6)(a) prohibits such board from discharging, demoting or transferring an employee for reasons having to do with prior misconduct or incompetency that has not been called to the attention of the employee through evaluations, and which is correctable.

Allegations of misconduct or incompetency are not substantially raised in the record in the instant proceeding. Therefore, we do not pass upon the effect of Policy 5300(6)(a) under the particular facts of this case.

*also* Syl. Pt. 8, *Smith v. State Workmen's Compensation Commissioner,* 159 W.Va. 108, 219 S.E.2d 361 (1975); Syl. pt. 7, *Evans v. Hutchinson,* 158 W.Va. 359, 214 S.E.2d 453 (1975). We find no reason to disagree with the Superintendent's interpretation of the law in cases similar to this one.

In *Morgan v. Pizzino,* 163 W.Va. 454, 256 S.E.2d 592 (1979), this Court determined that West Virginia Code § 18A–2–7 (1984 Replacement Vol.) requires that an employee be notified and given a hearing before any decision is made concerning their transfer or reassignment. Subsequent notice and hearing does not cure a premature decision not in compliance with the statute. "If a decision has already been made, and the employees have already been prejudged the process is meaningless." 163 W.Va. at 458, 256 S.E.2d at 595. *See also Lavender v. McDowell County Board of Education,* 174 W.Va. 513, 327 S.E.2d 691 (1984).

It being undisputed that the Board failed to follow West Virginia Code § 18A–2–7 (1984 Replacement Vol.) in the instant case, we hold that the appellant is entitled to reinstatement as head football coach at Logan High School with back pay.

In view of our determination as to the applicability of the statutory protections, we decline to address the constitutional due process issue raised by the appellant. Similarly, we find it unnecessary to address the asserted insufficiencies relating to the substantive evidence presented in the record.

For the foregoing reasons, we reverse the decision of the circuit court. The case is remanded for entry of an order consistent with the Court's opinion herein.

Reversed and remanded.

NEELY, Justice, dissenting:

I respectfully dissent because the majority opinion lacks common sense and defies the law. Once stripped down, this case is a question of whether a school board must retain the services of a losing football coach.

The majority argues that *W.Va.Code* 18A–2–1 [1969] through 18A–2–11 [1985] protect Mr. Smith's coaching job. More specifically they suggest that *W.Va.Code* 18A–2–7 [1977] and *W.Va.Code* 18A–2–8 [1985] grant Mr. Smith a passel of procedural rights that the school board must observe before they may select another coach. The most cursory glance at these two *Code* provisions reveals that neither is applicable to the case at hand. *W.Va.Code* 18A–2–7 [1977] provides for the assignment, transfer, promotion, demotion, suspension and dismissal of school personnel *by the school superintendent.* It was *the school board,* and not the school superintendent, which voted not to renew Mr. Smith's contract. Accordingly, *W.Va.Code* 18A–2–7 [1977] is wholly beside the point. Although the majority comes a little closer to hitting the mark when they invoke *W.Va.Code* 18A–2–8 [1985] (at least this provision deals with actions by the school board), it is also inapplicable to Mr. Smith's case because the statute deals only with suspensions and dismissals. The school board seeks neither to suspend nor to dismiss Mr. Smith. Rather, he will continue to teach at Logan County High School.

The Board voted not to renew Mr. Smith's coaching contract. *W.Va.Code* 18A–2–1 [1969] to 18A–2–11 [1985] does not govern contracts for extracurricular activities; these contracts are singled out for special treatment and are governed *exclusively* by *W.Va.Code* 18A–4–16 [1982]. That statute states:

(1) The assignment of teachers and service personnel to extracurricular assignments *shall be made only by mutual agreement of the employee and the superintendent,* or designated representative, subject to board approval. Extracurricular duties shall mean, but not be limited to, any activities that occur at times other than regularly scheduled working hours, which include the instructing, coaching, chaperoning, escorting, providing support services or caring for the needs of students, and which occur on a regularly scheduled basis.

(2) The employee and the superintendent, or a designated representative, sub-

ject to board approval, *shall mutually agree* upon the maximum number of hours of extracurricular assignment in each school year for each extracurricular assignment.

(3) The terms and conditions of the agreement between the employee and the Board of Education shall be in writing and signed by both parties.

(4) *An employee's contract of employment shall be separate from the extracurricular assignment agreement provided for in this section and shall not be conditioned upon the employee's acceptance or continuance of any extracurricular assignment proposed by the superintendent, as designated representative, or the board.* [Emphasis supplied by the Court.]

The legislature obviously wanted to allow for special treatment of extracurricular activities that would remove contracts to coach from other teaching and service contracts, to which the *Code* grants special protection and thus they devised a separate statutory scheme. When the legislature used the words "mutual agreement," they meant "mutual agreement." In this case the board did not agree!

The Legislature specifically placed extracurricular activities outside the ambit of the *W.Va.Code* 18A-2-1, *et seq..* Contracts for coaching and other extracurricular activities are singled out for special treatment for two reasons. First, teachers need protection. Under *W.Va.Code* 18A-4-16(4) [1982] the employee is protected against the school board's or superintendent's making unreasonable demands upon the employee to participate in extracurricular activities. Whether a teacher decides to coach cannot affect his underlying position as a teacher. Second, there is a pervasive, society-wide understanding that coaching is markedly different from teaching or other full time positions within a school. Courts that have considered the equivalence of coaching and teaching positions have almost unanimously decided that coaching positions are not the same as teaching positions and thus should not receive the same protections. *Smith v. Bd. of Education of Urbana School District*

*No. 116*, 708 F.2d 258 (7th Cir.1983); *Bryan v. Alabama State Tenure Com'n.*, 472 So.2d 1052 (Ala.Civ.App.1985); *Leone v. Kimmel*, 335 A.2d 290 (Del.Super.1975); *Tate v. Livingston Parish School Bd.*, 444 So.2d 219 (La.App. 1 Cir., 1983); *Irwin v. Board of Education of School District No. 25 of Holt County*, 215 Neb. 794, 340 N.W.2d 877 (1983); *Neal v. School District of York*, 205 Neb. 558, 288 N.W.2d 725 (1980); Because teaching and coaching are not equivalents, *W.Va.Code* 18-4-16 [1982] requires *separate contracts* for each position and the *mutual agreement* of the parties.

Through this bifurcated arrangement, the legislature accomplishes two goals. *W.Va.Code* 18A-2-1 *et seq.* remains in place to prevent teachers and service personnel from having their livelihoods arbitrarily stripped for refusing to coach. But it allows school boards and superintendents flexibility in providing for the supervision of extracurricular activities. Mr. Smith's case illustrates the utility of this division. The school board may remove him from his coaching position without affecting his real job—teaching. Teachers cannot have it both ways: they cannot claim the benefits of *W.Va.Code* 18A-4-16 [1982] and ignore its limitations. The statute exempts extracurricular activities from the protections of *Code* 18A-2-1 *et seq.*

What is even more depressing than the majority's inability to read a simple statutory scheme, is their ongoing, systematic attempt to remove all control over the school system from parents and other local authorities. In counties such as Logan, high school sports provide one of the main sources of social *esprit.* Games provide a center for the town's social life and a chance for its citizens to gather together. Teams such as the football team not only rely on the continuing support of the State, they also rely on a significant amount of community support in the form of booster clubs and attendance at the games. Because programs, such as the football program, are so important to community spirit and rely so heavily on community support, I feel no compunction leaving such pro-

grams' control in the hands of local residents. Without strong local support, any football program is doomed to failure.

It is apparent from the record that Mr. Smith is being fired because he can't win football games.[1] I cannot see who benefits by requiring a fact finding hearing to substantiate this point. Procedural rights to notice and hearing are an important means to protect individuals' rights, property, and liberty. But this does not mean that we should govern all human relations by reference to legal-style procedural due process. We should no more require a formal hearing before a school board may discharge a high school football coach than we should require a formal hearing before a young man breaks off his romantic relationship with a young woman. As Grant Gilmore observed:

> The better the society, the less law there will be. In Heaven there will be no law, and the lion will lie down with the lamb. The values of an unjust society will reflect themselves in an unjust law. The worse the society, the more law there will be. In Hell there will be nothing but law, and due process will be meticulously observed.

G. Gilmore, *The Ages of American Law*, 110–11 (1977). By extending the procedural rights granted to teachers and other school employees to football coaches, the majority does more than misread a statute and trivialize the venerable institution of tenure; they unveil a nasty and brutish world in which all human relations are governed by court approval that does absolutely nothing to win football games.

I am authorized to say that Justice BROTHERTON joins with me in this dissent.

---

1. Mr. Smith's record as head coach at Logan High School is as follows:

| | Wins | Losses |
|---|---|---|
| 1980 | 2 | 8 |
| 1981 | 4 | 6 |
| 1982 | 4 | 6 |
| 1983 | 4 | 6 |
| 1984 | 2 | 8 |
| TOTAL | 16 | 34 |