SECURITY NATIONAL BANK & TRUST CO., *et al.*

*v.*

FIRST W. VA. BANCORP., INC.,

A. CORP.; *et al., etc.*

(No. 14938)

Decided May 5, 1981.

*Beneke & Bremer and George F. Beneke, Arnold & Porter* for appellants.

*Bailey, Byrum & Vieweg, John Preston Bailey and George G. Bailey,* for appellees.

HARSHBARGER, CHIEF JUSTICE:

Security National Bank & Trust Co. and Half Dollar Trust and Savings Bank obtained a declaration from the Circuit Court of Ohio County finding First West Virginia Bancorp. Inc., a multibank holding company, in violation of W. Va. Code, 31A-8-12(b), and ordering:

> "defendant, First West Virginia Bancorp, Inc., a corporation, shall divest itself of all of the shares which it owns in either of the defendant banks, First West Virginia Bank, N.A.–Community or First West Virginia Bank, N.A.–Warwood, or, in the alternative, shall divest itself of seventy-five (75) per cent of the shares which it owns in both of the defendant banks . . ."

That Code section, as rewritten in 1975, provides:

> (b) It shall be unlawful for any individual, partnership, society, association, firm, institution,

trust, syndicate, public or private corporation, or any other legal entity, or combination of entities acting in concert, to directly or indirectly own, control or hold with power to vote, twenty-five percent or more of the voting shares of each of two or more banks, or to control in any manner the election of a majority of the directors of two or more banks . . . .

Defendants First West Virginia Bank N.A.–Community and First West Virginia Bank N.A.–Warwood are national banking associations regulated by the United States Comptroller of the Currency. Defendant First West Virginia Bancorp., Inc. is a bank holding company operating by a November, 1974 approval by the Board of Governors of the Federal Reserve Systems, 12 U.S.C. §1841, *et seq*, and is incorporated in this State. It purchased all shares of the other two defendants on January 30, 1975. The banks and holding company have directors and officers in common.[1]

---

[1] Affidavit of Ronald L. Solomon, President and Chief Executive Officer of First West Virginia Bancorp, Record pp. 96-106, at p. 100-101:

"6. The senior management of Bancorp, Community Bank, and Warwood Bank is substantially interdependent in other positions as well. For example, Eugene Singer is Secretary of each, a Vice-President of Bancorp, a Vice-President of Community Bank, and is in charge of operations for Bancorp and both banks. Charles Graham is a Vice-President of Bancorp, an Executive Vice-President of Community Bank, and is in charge of loans for Bancorp and both banks. James Davis serves as Auditor for Bancorp and both banks. If these individuals were required to resign from or terminate their relationships with one or the other bank, it would have a serious and prolonged adverse effect on their areas of responsibility. Such resignations and terminations of relationships would create a period of management confusion and inefficiency and would seriously threaten the competitive ability and financial stability of one or both banks.

7. Bancorp's board of directors is a further source of unified management strength. Each of the fifteen directors of Bancorp also serves as a director for either Community Bank or Warwood Bank; George Beneke and I serve as directors for all three organizations. The three committees of Bancorp—Budget and Marketing, Audit, and Executive—also serve on behalf of both banks, providing a common core of knowledge and guidance. In addition, the two separate bank boards now hold their meetings jointly within the Bancorp board.

# I.

State regulation of bank holding companies is not preempted by the Federal Bank Holding Company Act, 12 U.S.C. §1841, *et seq.*, because Section 1846[2] specifically reserves to the states the power to regulate them. *Lewis v. BT Investment Managers, Inc.*, 447 U.S. 27, 100 S.Ct. 2009, 64 L.Ed.2d 702 (1980); *Whitney National Bank v. Bank of New Orleans and Trust Co.*, 116 U.S. App. D.C. 285, 323 F.2d 290 (1963), *reversed on other grounds*, 379 U.S. 411, 85 S.Ct. 551, 13 L.Ed.2d 386 (1965). *See generally* Hearing on S. 880, S. 2350 and H.R. 6227 Before a Subcommittee of the Senate Committee on Banking and Currency, 84th Cong., 1st Sess. (1955); Hearings on H.R. 2674 Before the House Committee on Banking and Currency, 84th Cong., 1st Sess. (1955). Comment, Branch Banking Limitations Held Applicable to Approved Bank Holding Company Operation, 39 N.Y.U.L.Rev. 686 (1964).

A state may prohibit bank holding companies, whether the banks are federal or state. *Cf. Commercial National Bank v. Board of Governors*, 451 F.2d 86 (8th Cir., 1971); *Grandview Bank & Trust Co. v. Board of Governors*, 550 F.2d 415 (8th Cir.), *cert. denied*, 434 U.S. 821 (1977). Our statute would be invalid only if its application to national banks "expressly conflict[s] with the laws of the United States or frustrate[s] the purpose for which the national banks were created, or impair[s] their efficiency to discharge the duties imposed upon them by the law of the

---

Thus, all directors work together to promote the growth of both banks. This has proven particularly important with respect to the recently relocated Community Bank, which was helped greatly in attaining local acceptance through the Warwood directors. In my view, a forced divestiture would adversely affect both banks for years to come by depriving the banks of the strengthened management resources that were a primary purpose of the acquisition. As a result, the growth prospects and competitive vigor of both banks would be impaired."

[2] 12 U.S.C. §1846:

"The enactment by the Congress of the Bank Holding Company Act of 1956 shall not be construed as preventing any State from exercising such powers and jurisdiction which it now has or may hereafter have with respect to banks, bank holding companies, and subsidiaries thereof."

United States." *McClellan v. Chipman*, 164 U.S. 347, 357, 17 S.Ct. 85, 87, 41 L.Ed. 461 (1896); *Anderson Nat'l Bank v. Luckett*, 321 U.S. 233, 64 S.Ct. 599, 88 L.Ed. 692 (1944); *National State Bank v. Long*, 469 F. Supp. 1068 (D.N.J. 1979), *modified*, 630 F.2d 981 (3rd Cir., 1980); *National Bank of Hyde Park v. Isaacs*, 27 Ill.2d 205, 188 N.E.2d 704 (1963); *Braeburn Security Corp. v. Smith*, 15 Ill.2d 55, 153 N.E.2d 806, *app. dismissed*, 359 U.S. 311, 79 S.Ct. 876, 3 L.Ed.2d 831 (1959); *Opinion of Justices*, 102 N.H. 106, 151 A.2d 236 (1959); Scott, The Patchwork Quilt: State and Federal Roles in Bank Regulation, 32 Stan. L. Rev. 687, 690-95 (1980).

## II.

When Bancorp purchased the banks, our applicable statute was:

> (b) It shall be unlawful for any person to purchase and hold stock in any banking institution for the purpose of selling, negotiating or trading participation in the ownership thereof either for the purpose of perfecting control of one or more such banking institutions or for the purpose of inducing other persons, firms or corporations or the general public to become participating owners therein. Nothing herein shall prevent the ownership of stock in any such banking institution by any person for investment purposes.

A 1972 Attorney General's Opinion was that this section did not "prohibit the ownership by a corporation, for investment purposes, of the controlling interest in a bank doing business in West Virginia." But the act prohibited purchasing or holding stock to perfect control of one or more banks. Bancorp acquired the stock to exercise control, and its owners were participating owners of the banks in apparent violation of the old statute.

Interpretations of statutes by bodies charged with their administration are given great weight. *New York Department of Social Services v. Dublino*, 413 U.S. 405, 93 S.Ct. 2507, 37 L.Ed.2d 688 (1973); *Evans v. Hutchinson*, 158 W.Va. 359, 214 S.E.2d 453 (1975), Syllabus Point 7, *Detch v. Board of Education*, 145 W.Va. 722, 117 S.E.2d 138 (1960). The West Virginia Board of Banking & Financial Institutions,

responsible for administering the pre-1975 law, found in 1973 that the former law prohibited formation of a bank holding company. The Ohio County Circuit Court reversed in *In Re: The Proposed W. D. Bank Co.*, but an appeal was mooted by the 1975 act.

Federal and state constitutional provisions about impairing obligations of contracts, U. S. Const. art. I, §10 and W. Va. Const. art. III, §4, are not absolute. States can preserve community order, health, safety, morals and economic well-being, even though contracts are affected. *Manigault v. Springs*, 199 U.S. 473, 26 S.Ct. 127, 50 L.Ed. 274 (1905); *Home Building & Loan Ass'n. v. Blaisdell*, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413 (1934); *East New York Savings Bank v. Hahn*, 326 U.S. 230, 66 S.Ct. 69, 90 L.Ed. 34 (1945); *United States Trust Co. v. New Jersey*, 431 U.S. 1, 97 S.Ct. 1505, 52 L.Ed.2d 92, *reh. denied*, 431 U.S. 975, 97 S.Ct. 2942, 53 L.Ed.2d 1073 (1977). The threshold inquiry is the severity of impairment of private contractual rights. *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 98 S.Ct. 2716, 57 L.Ed.2d 727, *reh. denied*, 439 U.S. 886, 99 S.Ct. 233, 58 L.Ed.2d 201 (1978).

State police power must be reasonably and necessarily imposed to accomplish a legitimate public purpose. *Home Building & Loan Ass'n. v. Blaisdell, supra; East New York Savings Bank v. Hahn, supra; United States Trust Co. v. New Jersey, supra; Allied Structural Steel Co. v. Spannaus, supra.* A legislature's discretion in deciding what is reasonable and necessary must be respected. *Manigault v. Springs, supra; East New York Savings Bank v. Hahn, supra; United States Trust Co. v. New Jersey, supra.* The power cannot be exercised to protect private interests, but rather basic societal interests. *Home Building & Loan Ass'n. v. Blaisdell, supra; Veix v. Sixth Ward Building & Loan Ass'n.*, 310 U.S. 32, 60 S.Ct. 792, 84 L.Ed. 1061 (1940); *Allied Structural Steel Co. v. Spannaus, supra; Treigle v. Acme Homestead Ass'n.*, 297 U.S. 189, 56 S.Ct. 408, 80 L.Ed. 575 (1936). Our banking code was designed "to provide services to the public which are necessary and desirable for the economic, social and industrial health and development of the State." Code, 31A-1-1. So Code, 31A-8-12, is

legislatively declared to be an exercise of police power to protect a basic societal interest. *See generally Farmers and Merchants Bank v. Federal Reserve Bank*, 262 U.S. 649, 43 S.Ct. 651, 67 L.Ed. 1157 (1923); *Timmons v. People's Trust Co.*, 114 W.Va. 618, 173 S.E. 79 (1934); 10 Am. Jur. 2d *Banks* §10 (1963 and Supp.); 9 C.J.S. *Banks and Banking* §5 (1938 and Supp.).

Regardless of whether old 31A-8-12(b) clearly proscribed multibank holding companies, it regulated and limited the purchase and holding of bank stock. Bank stock ownership was subject to strict regulation, and all banking activities were, and are, heavily regulated. *See generally* W. Va. Code, Chapter 31A.

Even if a private contract predates a police power measure that affects it, there is no violation of the contract clause if parties were on notice about the possibility of future regulation. *Veix v. Sixth Ward Building & Loan Ass'n., supra.* Justice Reed wrote for a unanimous court in *Veix, supra* 310 U.S., at 38, 60 S.Ct., at 795:

> It was while statutory requirements were in effect that petitioner purchased his shares. When he purchased into an enterprise already regulated in the particular to which he now objects, he purchased subject to further legislation upon the same topic. (Footnote omitted.)

These defendants, Bancorp and its banks, "contracted" subject to state and federal regulation. The "contract"[3] or charter of Bancorp to do business in this state is not impaired, because the object of its incorporation, as stated in its Articles of Incorporation, was only "[t]o have unlimited power to engage in and to do any lawful act or activity for which corporations may be organized under the laws of the State of West Virginia", and holding controlling shares of stock in two banks is not a lawful activity in West Virginia.

---

[3] There was no contract in evidence between Bancorp and its subsidiary banks.

We must amend the trial court decree, however, to comport with the statute: Bancorp may own all of one bank, and less than 25 percent of the other.[4]

*Affirmed.*

---

[4] Arguments that plaintiffs were barred by laches, and that they should have proceeded against defendants administratively, *see Bank of Wheeling v. Morris Plan Bank & Trust Co.*, 155 W.Va. 245, 183 S.E.2d 692 (1971), were not made to the trial court and need not be considered here. *Mahoney v. Walter*, 157 W.Va. 882, 205 S.E.2d 692 (1974), Syllabus Point 1.