399 S.E.2d 176

**Nettie BRIGHT and Lela Sponaugle**

v.

**TUCKER COUNTY BOARD OF EDUCATION.**

No. 19419.

Supreme Court of Appeals of West Virginia.

Nov. 9, 1990.

Kathleen Abate, Cohen, Abate & Cohen, Fairmont, William McGinley, WV Educ. Ass'n, Charleston, for appellant.

Harry M. Rubenstein, Kay, Casto, Chaney, Love & Wise, Morgantown, William M. Miller, Pros. Atty., Tucker Co., Parson, for Tucker County BOE.

BROTHERTON, Justice:

The petitioners, Nettie Bright and Lela Sponaugle, appeal from the July 20, 1989, order of the Circuit Court of Tucker County which reversed the September 18, 1987, decision of the hearing examiner of the West Virginia Education Employees Grievance Board awarding the petitioners experience credit for the nine years in which they taught in the Head Start Program in Tucker County.

The petitioners began working as teachers aides in the Head Start Program in 1965. Then, in 1969, although neither of the petitioners were certified as licensed professional teachers, both were reassigned to positions as instructors, or "center leaders," employed by the North Central West Virginia Community Action Head Start Program in Tucker County, West Virginia.[1]

In 1978, the petitioners became certified and were hired as elementary school teach-

---

1. The record indicates that in 1969 there was a shortage of certified teachers, particularly in the field of early childhood education. For that reason, the Tucker County Board of Education

ers by the Tucker County Board of Education ("Board of Education"). Sometime during the 1979–80 school year, the petitioners learned that former Head Start teachers in other counties with similar education and certification had received experience increments for the time they were lead teachers in the Head Start program.[2] The petitioners questioned Tucker County school administrators about their own eligibility for this type of experience credit. When they received no response, the petitioners contacted their West Virginia Education Association ("WVEA") representative, Steve Benson, who wrote to the Tucker County Superintendent of Schools, Michael Eberbaugh, about the problem. However, the petitioners maintain that their request for a ruling on this matter was ignored.

The petitioners state that they made their first written request for experience increments on June 11, 1980. However, a grievance was not actually filed until January 28, 1985, when the petitioners argued that, pursuant to W.Va.Code § 18A–4–1, they should be given credit for nine years of Head Start experience as lead teachers. At a hearing before the Board of Education on May 21, 1985, the grievance was denied. The petitioners appealed this decision to the State Superintendent of Schools, who refused to hear their case because of the new grievance procedure established by W.Va.Code § 18–29–1 *et seq.* The case proceeded to the Circuit Court of Kanawha County on December 6, 1985, via a Writ of Certiorari.

On January 29, 1986, the case was remanded to the newly created West Virginia Education Employees Grievance Board ("Grievance Board"). Subsequent negotiations between the parties resulted in an October 21, 1986, agreement in which the Board of Education acknowledged that Mrs. Bright and Mrs. Sponaugle were Head Start teachers for the purposes of W.Va. Code §§ 18A–4–1, 18A–4–10, and 18–7A–1 *et seq.* Although the agreement was signed by both of the parties, it was later rescinded for reasons not made clear by the record.[3] After failing to negotiate a settlement, a Level Four hearing was held before the Grievance Board on June 30, 1987.

---

voted unanimously to hire uncertified teachers in the Head Start program, which was funded 90% by federal funds and 10% by in-kind services from the local board and other sources in Tucker County. According to the brief filed by the petitioners in this case, "[t]he Board minutes from that time reflect a concern by school administrators and Board members that the Head Start program not compete with the regular public schools for certified teachers and exacerbate a teacher shortage."

We note that Board of Education minutes dated June 3, 1968, contain references to Jon P. Crowell, the Director for Head Start in Tucker County, and his discussion of the salaries to be paid to teachers in this program. The minutes reflect that:

> He [Crowell] told the board that in the future he would hire all of his Head Start Teachers from outside the county to prevent an interference with the supply of substitute teachers within the county. Mr. Freeman recommended the approval of the Head Start Policy to obtain all teachers from outside the county and permit them to use teachers who do not qualify for the State Department Teaching regulations. *In federally operated programs the teaching personnel are not required to meet W.Va. Certification Standards.* (Emphasis added.)

2. West Virginia Code § 18A–4–1(b) (1988) defines "advanced salaries" as "the basic salary plus an experience increment based on the al-

lowable years of experience of the respective teachers...."

3. In their brief, the petitioners state that the Board of Education rescinded the entire agreement because the parties sought to include credit toward retirement, an issue controlled by the West Virginia Teachers' Retirement Board. The petitioners claim that although it was finally agreed upon that it was improper to receive credit toward teachers' retirement, the Board of Education then refused to comply with the portion of the agreement which was under their control—experience increments.

However, the Board "takes strong exception to the [petitioners'] characterization of the facts with regard to the attempt to resolve the litigation, and [petitioners'] claims that the Board rescinded the agreement." The Board states that the petitioners agreed to dismiss their claim for wages and benefits they alleged were owed to them prior to September 1, 1986, if the Board of Education could obtain credit for them with the Teachers Retirement Board for the years they were employed by the North Central Community Action Association. However, the Teachers Retirement Board refused to grant the petitioners' request for participation in their retirement system prior to 1978 and, according to the Board of Education, this position was communicated to the parties by letter dated May 27, 1987.

On September 18, 1987, the hearing examiner granted the grievance and ordered the Board of Education to credit the petitioners for their years of teaching experience with the Head Start program and to compensate them for wages and benefits which they never received because experience increments were denied. The Board of Education filed notice of intent to appeal on October 15, 1987, and their appeal was filed on December 3, 1987.

On December 22, 1987, the petitioners sought a writ of mandamus to compel enforcement of the Grievance Board's decision. Hearings were held on January 25 and February 19, 1988. On March 3, 1988, both parties filed briefs and the matter was submitted to the circuit court for decision. On January 12, 1989, the circuit court issued a memorandum opinion in which it reversed the hearing examiner's decision and held that until a degree is earned and a certificate obtained, a teacher is not entitled to acquire credit "for time served as a teacher." The court also found that the petitioners' grievance claims were barred by an unspecified statute of limitations and laches.

The issue now presented to this Court is whether the appellants are entitled to receive experience increments for salary purposes for the time they functioned as lead teachers in the Head Start program without the benefit of certification. Although we have never had the opportunity to address this question, the State's school boards and superintendents have wrestled with similar issues for years, with results which seem to support the petitioners' arguments in this case.[4] Moreover, in a report dated November 13, 1980, the Attorney General responded to an inquiry from the State Superintendent of Schools, Dr. Roy Truby, who sought to clarify several of these issues. Regarding the status of teachers aides, the Attorney General stated that "[f]or purposes of incremental pay under the State minimum salary schedules, previous employment as a teacher aide is not experience in the 'teaching profession.'" However, the Attorney General found that "with respect to previous employment in Head Start Programs ... *this office cannot categorically advise whether such employment is experience in the teaching profession.* School administrators must make a factual analysis of such employment in each case." (Emphasis added.) In reaching this conclusion, the Attorney General stated that:

The questions relating to previous employment in the Head Start Program and as a county 4–H agent cannot be categorically answered by this office. Unlike the situation with public school teacher aides, we find no State Board regulations

4. West Virginia Code § 18–3–6 (1988) states that "[a]t the request in writing of any citizen, teacher, school official, county or state officer, the state superintendent of schools shall give his interpretation of the meaning of any part of the school law or of the rules of the state board of education."

In this case, for example, in a letter dated August 30, 1974, the superintendent recognized that "Head Start instructional sessions in the classroom are quite short, but they are essentially the same length as kindergarten sessions, and Head Start is similar in other ways to the Early Childhood Education Program of the State." The superintendent then concluded that "it appears that experience as a Head Start teacher is teacher's experience for public school pay increment purposes...."

In an October 18, 1977, letter, the superintendent elaborated on the interpretation of "teaching experience" and stated that "[t]he term 'teaching experience' covers a wide spectrum of educational service—whether instructional, counselling, or administrative—ranging from the private and parochial schools through the community action agencies, M.D.R.A. programs, etc., to the nursing homes."

On September 19, 1978, former State Superintendent Daniel B. Taylor responded to an inquiry about Dorothy Bolyard, who taught in the Head Start program between 1971 and 1977 without certification before becoming a certified elementary school teacher in Preston County. The superintendent found that Mrs. Bolyard had acquired seven years of teaching experience as a Head Start instructor, stating that "[s]ince Head Start teaching itself is teacher's experience, it is not important whether such teaching has been done as an employee of a county board of education or with some other employer."

"Interpretations of statutes by bodies charged with their administration are given great weight unless clearly erroneous." Syl. pt. 4, *Security Nat'l Bank & Trust Company v. First W.Va. Bancorp, Inc.,* 166 W.Va. 775, 277 S.E.2d 613 (1981), *appeal dismissed,* 454 U.S. 1131, 102 S.Ct. 986, 71 L.Ed.2d 284 (1982).

or school laws spelling out the general functions or "position descriptions" of county 4–H agents and Head Start workers. Therefore, in determining whether previous employment in these positions (and other positions outside the public schools) may be counted as teacher experience for pay purposes, it would seem that school administrators, including the State Superintendent, must make a factual analysis of each previous employment to determine whether it falls within the statutory parameters, *i.e.*, employment "in the teaching profession, including active work in educational positions other than the public schools" (Code 18A–4–1). If the factual analysis discloses that the previous nonpublic school employment substantially corresponds to one of the categories of "professional educator" quoted above in Code 18A–1–1, the intent of the Legislature appears to support the crediting of that employment as teacher experience. In this respect, we note that in your interpretation of August 1, 1979, you concluded that prior employment in Operation Head Start "in an instructional or counseling position, or in an administrative position over instructors or counselors" should be counted as teacher experience. Although it is not the task of this office to make the factual analysis mentioned above, we would point out that you have described employment positions that appear to correspond substantially to public school positions included in the definition of "professional educator" (Code 18A–1–1). Accordingly, we have no reason to disagree with your interpretation as to those specific kinds of previous employment with the Head Start Program.

18 Op. Att'y Gen. 68 (1980).

■ In the case now before us, the circuit court held that employees are not eligible to receive experience increments as professional teachers until they obtain a degree and receive a license. This decision was based upon W.Va.Code § 18A–1–1 (1988), which defines "professional personnel" as "persons who meet certification and/or licensing requirements of the State." However, the appellants argue that the issue is controlled by W.Va.Code § 18A–4–1 *et seq.* (1988), wherein "years of experience" is defined as "the number of years *the teacher* has been employed in the teaching profession, including active work in educational positions other than the public schools...." (Emphasis added.) It is the appellants' position that when they were hired by the Tucker County Board of Education to fill positions as fully certified elementary school teachers, the Board should have properly determined their "allowable years of experience" credit for salary purposes by applying W.Va.Code § 18A–4–1(1).

The Board of Education counters with the argument that in order to gain experience credit, a teacher must meet the statutory definition of a teacher at the time experience is acquired in that they either (1) are employed by a county board of education [5] and possess a baccalaureate degree or (2) are regularly employed for instructional purposes in a public school. While the Board of Education maintains that the petitioners meet none of these criteria, we disagree.

■ West Virginia Code § 18–1–1(g) (1988) states that " 'teacher' shall mean teacher, supervisor, principal, superintendent, public school librarian; ... *or any other person regularly employed for instructional purposes in a public school in this State....*" There is little question

---

**5.** Although the petitioners were employed by the North Central Community Action Program, Board minutes found in the record tend to support a conclusion that the Head Start Program was controlled in large part by the Tucker County Board of Education. For example, Board minutes dated October 3, 1967, contain references to "our Head Start programs," and a discussion of the fact that at that time there was no Head Start Director. Mr. J. J. Straight [Director of the Multi–County for Head Start] "reported that if the board and the O.E.O. can work together for an effective program, then it can be started without a director." Mr. Straight also indicated that "they pay only the State basic salaries, complying with county supplements ... *also the teachers and directors final approval comes from the board of education.*" (Emphasis added.)

that, in this case, although the circumstances surrounding their elevation to positions as instructors may have been unique, the petitioners were in fact "regularly employed for instructional purposes in a public school in this State...." The hearing examiner who heard this case found that the evidence supported the petitioners' contention that they were assigned and performed the full range of responsibilities of a degreed teacher.[6] Additionally, the petitioners were required to enter into a higher education program sponsored by Head Start through Marshall University in which they worked towards their bachelor's degree and eventual certification. The hearing examiner also found that teachers similar to the petitioners had been given credit for Head Start experience in counties throughout the State, no doubt as a result of the aforementioned conclusions reached by the State Superintendent of Schools and the Attorney General.

Based on the foregoing, we conclude that the petitioners functioned as teachers in the Head Start Program beginning in 1969, when they were reassigned to positions as instructors, and for that reason, they are entitled to the compensation which they have not received because experience increments have been denied. We hereby reverse the July 20, 1989, order of the Circuit Court of Tucker County[7] and remand this case to that court for entry of an order consistent with this opinion.

Reversed and remanded.

---

6. The record indicates that the petitioners worked a minimum of 133 days, prepared lesson plans, supervised teachers aides and parent volunteers, and were designated teachers by the Tucker County Board of Education. Although the records pertaining to the Head Start Program in Tucker County during the years in question have been destroyed, the Head Start Director from 1967 through 1972, Jon P. Crowell, stated in an affidavit that "[t]he Head Start position of Center Leader gave these two [the petitioners] the full range of responsibilities of a degreed teacher."

7. In its July 20, 1989, order the court also found that "the grievance was not timely filed, thus barred by Statute of Limitations and Laches." The court did not elaborate on this finding, but we disagree with the conclusion, however it was reached, that the petitioners failed to diligently pursue their claim.