452 S.E.2d 412

**Donald E. SMITH, Petitioner Below, Appellant,**

v.

**The BOARD OF EDUCATION OF the COUNTY OF GREENBRIER, Respondent Below, Appellee.**

**No. 22154.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 27, 1994.

Decided Dec. 8, 1994.

William B. McGinley, Charleston, for appellant.

Erwin L. Conrad, Conrad and Clay, Fayetteville, for appellee.

WORKMAN, Justice:

Donald E. Smith (hereinafter "Appellant") appeals from the August 18, 1993, order of the Circuit Court of Kanawha County upholding the denial of his grievance before the Education and State Employees Grievance Board ("Grievance Board") wherein he sought entitlement to the state equity supplement as a part of his substitute teacher remuneration. Having examined this issue at length, we affirm the decision of the lower court.

Appellant filed a grievance[1] with the Grievance Board pursuant to West Virginia Code §§ 18–29–1 to –11 (1994), asserting that he had been underpaid based on the failure of the Greenbrier County Board of Education (the "Board") to include the state equity supplement[2] in the calculation of his pay.[3] His grievance was denied at the first two levels and proceeded to a level IV hearing before the Grievance Board on March 26, 1992.[4] The Grievance Board denied Appellant's grievance by decision dated September 8, 1992, finding no violation of West Virginia Code § 18A–4–7 (1993). By order dated August 18, 1993, the circuit court upheld the denial of Appellant's grievance.

The issue before this Court was properly framed by ALJ below as: "whether state equity pay must be included in the daily rate of pay of substitute teachers who do not teach more than ten consecutive days in the same position."[5] In resolving the issue below, the ALJ first examined the language of West Virginia Code § 18A–4–7 entitled "Substitute Teacher Pay:"

> *The pay of a substitute teacher shall not be less than eighty percent of the daily rate of the state basic salary paid to teachers:* Provided, That any substitute teacher

---

1. It appears that two separate grievances were filed by Appellant; one on December 18, 1991, in connection with the 1990–91 school year and one on February 13, 1992, in connection with the 1991–92 school year. We will treat the two grievances, assuming there were two separate complaints filed, as one, consistent with the manner in which these proceedings were handled below.

2. The state equity supplement is an amount paid pursuant to West Virginia Code § 18A–4–5 (1993) to achieve salary equity among the counties. The objective of salary equity is to achieve a situation where "the salary potential of school employees employed by the various districts throughout the state does not differ by greater than ten percent between those offering the highest salaries and those offering the lowest salaries." W.V.Code § 18A–4–5, *see also State ex rel. Board of Educ. v. Manchin,* 179 W.Va. 235, 366

S.E.2d 743 (1988) (discussing unconstitutionality of fixing a county's entitlement to state equity funding on whether an excess levy was in effect in that particular county on January 1, 1984).

3. Appellant complains that he was underpaid $578.79 for the 1990–91 school year and $1,177.20 for the 1991–92 school year.

4. The level III hearing was waived by the Board.

5. By statute, substitute teachers who teach more than ten consecutive days in one position are entitled to a percentage basis of an advanced salary as opposed to a percentage rate of the basic salary as is at issue here. *See* W.Va.Code § 18A–4–7. It is undisputed that Appellant did not work more than ten days in any substitute teaching position during the relevant time periods.

who teaches in excess of ten consecutive instructional days in the same position shall, thereafter, not be paid less than eighty percent of the daily rate of the state advanced salary based upon teaching experience: Provided, however, That any substitute teacher who teaches in excess of thirty days in the same position shall be paid the daily rate of the advanced salary, within that teacher's county.

W.Va.Code § 18A–4–7 (emphasis supplied).

Next, the ALJ looked to the definitions of state "basic salaries" and state "advanced salaries" found in West Virginia Code § 18A–4–1 (1993):

> For the purpose of this article, salaries shall be defined as: (a) *'Basic salaries' which shall mean the salaries paid to teachers with zero years of experience and in accordance with the classification of certification and of training of said teachers;* and (b) 'advanced salaries' which shall mean the basic salary plus an experience increment based on the allowable years of experience of the respective teachers in accordance with the schedule established herein for the applicable classification of certification and of training of said teachers.

*Id.* (emphasis supplied).

Continuing this statutory analysis, the ALJ then looked to the statute which defines the amount of salary paid to teachers with zero years of experience. West Virginia Code § 18A–4–2 (1994) contains a "State Minimum Salary Schedule"[6] which delineates the minimum salary for teachers based on their classification of certification and training as well as based on years of experience. As the ALJ noted, the Appellant relies heavily on the introductory language of West Virginia Code § 18A–4–2 which precedes the actual salary schedules:

each teacher shall receive the amount prescribed in the 'state minimum salary schedule I' as set forth in this section, *specific additional amounts prescribed in this section or article,* and any county supplement in effect in a county pursuant to section five-a [§ 18A–4–5a] of this article during the contract year.

W.Va.Code § 18A–4–2 (emphasis supplied).

In analyzing the significance of the underscored language and its impact on the issue of whether equity pay should be included in the calculation of the daily rate of substitute teacher pay, the ALJ opined:

> The grievant's reliance on language in the first paragraph of *W.Va.Code* § 18A–4–2 is misplaced. There is no language in that paragraph even suggesting that it was intended to have any applicability to substitute teacher pay. The purpose of that provision is to establish state minimum salaries for regular teachers. Furthermore, while *W.Va.Code* § 18A–4–7 refers to state basic salary, state advanced salary and a county's advanced salary schedule, nowhere does it mention equity funding. The undersigned is of the opinion that this provision evinces an intent that the daily rate of pay for substitute teachers is to be calculated by reference to the specific amounts set forth in the state minimum salary schedule, except where the teacher is employed for more than thirty days in the same position. (footnote omitted)

Henry Marockie, as the State Superintendent of Schools ("State Superintendent"), issued an opinion letter dated January 27, 1992, which states that "the term 'state basic salary' and the term 'state advanced salary' contained in the above-referenced Code section [W.Va.Code § 18A–4–7] do not include state equity." That opinion readily acknowledged that "[t]his interpretation is a reversal of the position taken in 1986 by Dr. McNeel."[7] Given the two conflicting adviso-

---

**6.** West Virginia Code § 18A–4–2 (1993) actually contains two minimum schedules, Schedule I was effective beginning July 1, 1992, and Schedule II became effective on July 1, 1994. Given the school years at issue here—1990–91 and 1991–92—the version of West Virginia Code § 18A–4–2 which controls this case is 1991. However, we need not belabor this point as the existence of the schedules themselves, rather than the varying salary figures set forth within the schedules, is what is relevant here.

**7.** In an opinion letter dated April 15, 1987, previous State Superintendent, Dr. McNeel, had concluded that equity pay was included in the definitions of state basic salary and state advanced salary.

ry opinions from the State Superintendent, the ALJ chose to give "no weight ... to either opinion in deciding the legal issue presented in this case."

■ While the existence of conflicting opinions from two state superintendents admittedly raises a question of the precedential value to be accorded the opinions, nonetheless, we have previously stated that: 'Interpretations of statutes by bodies charged with their administration are given great weight unless clearly erroneous.' Syl.Pt. 3, *Smith v. Board of Educ.*, 176 W.Va. 65, 341 S.E.2d 685 (1985) (quoting Syl.Pt. 4, *Security Nat'l Bank & Trust Co. v. First W.Va. Bancorp, Inc.*, 166 W.Va. 775, 277 S.E.2d 613 (1981)). The interpretation currently in effect is that of Mr. Marockie, and unless we can find clear error in such opinion, it should be accorded "great weight." *Id.* Nonetheless, as is our custom, we independently analyze this issue of statutory interpretation.

■ Our analysis necessarily centers on the interplay between the provisions found in West Virginia Code §§ 18A–4–7, –1, –2, and –5. As discussed above, the statute addressing substitute teacher pay—§ 18A–4–7—defines such pay with reference to state "basic salary." [8] The question which then arises is what the Legislature intended when it defined "basic salaries" in West Virginia Code § 18A–4–1 by referencing "the salaries paid to teachers with zero years of experience and in accordance with the classification of certification and of training of said teachers."

Appellant urges us to unravel this issue of statutory interpretation by concluding that the Legislature was merely directing us to West Virginia Code § 18A–4–2 and the language therein setting forth minimum teacher salaries. By defining "basic salaries" in terms of "salaries paid to teachers with zero years of experience," Appellant contends that the Legislature intended that whatever salary a full-time teacher with zero years of experience would receive pursuant to West Virginia Code § 18A–4–2, that amount should be used as the basis for calculating a

substitute teacher's daily rate of pay. W.Va. Code § 18A–4–1. According to Appellant's interpretation, it necessarily follows that state equity supplements should be included in the daily rate of a substitute teacher's pay given the language preceding the minimum salary schedules in West Virginia Code § 18A–4–2 that expressly includes "specific additional amounts prescribed in this section or article" as part of the minimum salary. W.Va.Code § 18A–4–2.

Like the Grievance Board below, however, we do not conclude that the definition of "basic salaries" was intended to encapsulate the entirety of the language set forth in West Virginia Code § 18A–4–2. We reach this conclusion for several reasons. First, had the Legislature intended for the daily rate of a substitute teacher to be calculated based on the language set forth in West Virginia Code § 18A–4–2, such a statutory reference could easily have been made within West Virginia Code § 18A–4–7. Second, in defining "basic salaries" as "the salaries paid to teachers with zero years of experience and in accordance with the classification of certification and of training of said teachers," it appears that the Legislature was utilizing such language as a *textual* reference to the "state minimum salary schedule" set forth in West Virginia Code § 18A–4–2. The schedule itself is a chart which sets forth gradations of salary based on classification (2nd through 4th) and attained educational degrees (A.B. through doctorate) in the horizontal column entries and years of experience in the vertical column entries. Thus, the definition of "basic salaries" merely indicates that to determine a particular individual's base salary, you locate the intersection of the years of experience on the vertical column entry and the corresponding minimum salary figure for their level of specific certification (classification and/or training) on the horizontal column entry of the minimum salary schedule.

Even an analysis outside of the legislative scheme seems to suggest that supplements, equity or otherwise, would not be included within the term "basic salaries." The term

---

**8.** While West Virginia Code § 18A–4–7 also references the term "state advanced salary," because such term does not enter into the calcula-

tions of Appellant's salary based on the parties' admissions, we make no further reference to such term.

"basic" according to Webster's Dictionary is defined as, "constituting or serving as the basis or starting point." Webster's Ninth New Collegiate Dictionary 133 (1983). Thus, a basic salary, by definition, would be one without such additional amounts as would be represented by items such as supplements.[9] In this vein, those amounts set forth in the minimum salary schedule would appear to fall within the category of a generic basic salary as they are a starting point for teacher salary, to which supplemental amounts may be added, if provided for by law.

An examination of the statute which provides for salary equity supplements discloses language comporting with our analysis. West Virginia Code § 18A-4-5(b) states:

> To assist the state in meeting its objective of salary equity among the counties, as defined in subsection (a) of this section, on and after the first day of July, one thousand nine hundred eighty-four, subject to available state appropriations and the conditions set forth herein, each teacher and school service personnel shall receive a supplemental amount in addition to the amount from the state minimum salary schedules provided for in this article.

This language clearly reflects that such supplemental amounts are considered separate and apart from the amounts set forth in the minimum salary schedule. Moreover, such language supports the interpretation that such equity figures are not intrinsically included within the concept of "basic salaries," as that term is defined in West Virginia Code § 18A-4-1. Instead, the supplemental amounts mandated by West Virginia Code § 18A-4-5 fall within the language of West Virginia Code § 18A-4-2 referencing "specific additional amounts prescribed in this section or article." As such, they are not part of the "basic salaries" which is set forth in the minimum salary schedule, but merely an additional figure used for the purpose of achieving relative salary parity within the meaning of West Virginia Code § 18A-4-5.

█ Accordingly, we conclude that the term "basic salaries" as it is defined in West Virginia Code § 18A-4-1 only refers to the corresponding amount of salary appearing in the minimum salary schedule amounts within West Virginia Code § 18A-4-2 and does not encompass any additional amounts, such as equity supplements. Therefore, the calculation of the daily amount of remuneration paid to a substitute teacher pursuant to West Virginia Code § 18A-4-7 (1993) does not include an amount for the state equity supplement.

Based on the foregoing, the decision of the Circuit Court of Kanawha County is hereby affirmed.

Affirmed.

BROTHERTON, C.J., did not participate.

MILLER, Retired Justice, sitting by temporary assignment.

---

**9.** The Board notes that substitute teachers do not receive all the benefits to which full-time teachers are entitled. Specific examples of such disparity include: sick leave, personal leave days, and calculation of seniority for retirement purposes. The Board suggests that these existing differences demonstrate that our Legislature has previously chosen to treat full-time teachers and substitute teachers differently. Consequently, the Board submits that in carving out the entitlement of substitute teachers to state equity pay, the Legislature is not acting in an inconsistent fashion.