578 S.E.2d 376

**BOARD OF EDUCATION OF the COUNTY OF TAYLOR,**
Plaintiff,

*v.*

**BOARD OF EDUCATION OF the COUNTY OF MARION, and Thomas E. Long, Superintendent of Marion County Schools, Defendants.**

No. 30683.

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 21, 2003.

Decided Feb. 27, 2003.

Basil R. Legg, Jr., Clarksburg, for the Appellant.

Stephen R. Brooks, Flaherty, Sensabaugh & Bonasso, Morgantown, for the Appellees.

DAVIS, Justice.

The Circuit Court of Taylor County presents this Court with a certified question asking whether a county board of education may, without agreement from another county, establish bus stops within that other county to provide transportation to students who have received proper authorization to attend school in the county providing the transportation. We answer this question affirmatively.

## I.

### FACTUAL AND PROCEDURAL HISTORY

On July 1, 2000, Jane M. Reynolds was elected Superintendent of Taylor County Schools. Following her election, Superintendent Reynolds learned that the Marion County Board of Education had established bus stops within Taylor County without the knowledge or approval of the Taylor County Board of Education.[1] Superintendent Reynolds also discovered that there were Taylor County resident children who could not be accounted for by the attendance records of the Taylor County school system. It was learned that many of these students were being permitted to attend Marion County schools even though they had not obtained

---

1. The Taylor County Board of Education contends that the Marion County Board of Education has established twenty-one bus stops in Taylor County and that three Marion County buses are traveling eighteen miles in Taylor County on a daily basis. According to the Taylor County Board, the stops are not located on exist-ing Marion County bus routes necessitated by the winding of roads between the two counties, rather they are on routes that were established sometime after February 1995. The Taylor County Board further submits that the Marion County bus routes now extend into Taylor County residential subdivisions.

the consent of both the Marion and the Taylor County Boards of Education, as required by statute.[2] It is undisputed that these students are among those being transported on the Marion County buses that service stops in Taylor County. The remaining students receiving such transportation have complied with the statutory requirement of obtaining the consent of both the Taylor County and Marion County Boards to attend school in Marion County.

On September 4, 2001, Superintendent Reynolds contacted Thomas E. Long, Superintendent of Marion County Schools, and asked that Marion County suspend its practice of stopping its buses in Taylor County to transport Taylor County resident students to Marion County schools. Initially, Superintendent Long agreed to discontinue the busing practice on October 19, 2001. However, after obtaining an interpretation of certain school transportation issues from Dr. David Stewart, State Superintendent of Schools, Superintendent Long determined to continue the bus service in Taylor County. In his letter stating his interpretation, Superintendent Stewart opined:

> Marion County has not violated any statutes or policies by allowing Taylor County students, who have been granted board permission to attend Marion County Schools, to ride the bus on an existing Marion County bus route from Taylor County into Marion County to attend school.
>
> Voluntary transfers of students from one county to another within the state of West Virginia are controlled by W. Va.Code § 18–5–16. The statute does not require that counties provide transportation to students voluntarily transferring into or out of the county.

. . . .

> "A county board of education is not responsible for transportation costs for students who attend school in a county other than that of their residence, even though the county board has approved the attendance in another county, unless the county board itself has initiated a plan to have the students attend school in a county other than their residence. In an instance where the plan has been initiated by one or more county boards of education, the sending and receiving counties, where both have agreed to the transfer, must determine the method of, and provide coverage for the costs of, transportation to the other county."

*West Virginia Board of Education Policy 7212.* The Policy further states that "[c]ounty school buses *may* provide transportation to students across county boundaries and *may* pick up students in one county for attendance in the schools of another county." (Emphasis added).

Therefore, based on the applicable law and policy, Marion County should not be prohibited from choosing to allow Taylor County students, who have been granted board permission to attend Marion County Schools pursuant to W. Va.Code § 18–5–16, to ride a bus on an existing Marion County bus route from Taylor County into Marion County to attend school.

Thereafter, on October 23, 2001, the Board of Education for the County of Taylor (hereinafter referred to as "the Taylor County Board") filed a complaint in the Circuit Court of Taylor County against the Board of Education for the County of Marion and its Superintendent, Thomas E. Long (hereinafter collectively referred to as "the Marion County Board"). The complaint sought prelimi-

---

**2.** *See* W. Va.Code § 18–5–16 (1949) (Repl.Vol. 1999) ("Transfers of pupils from one county to another may be made by the board of the county in which the pupil desiring to be transferred resides; but the transfer shall be subject to the approval of the board of the county to which the pupil wishes to be transferred . . . ."). At the time the instant dispute arose, the foregoing 1949 version of W. Va.Code § 18–5–16 was in effect. However, during the pendency of this action, numerous sections of the West Virginia Code related to education were amended, includ-

ing W. Va.Code § 18–5–16. *See* W. Va.Code § 18–5–16(b)(1) (2002) (Supp.2002) ("Transfers of students from one county to another may be made by the county board of the county in which the student desiring to be transferred resides. The transfer shall be subject to the approval of both the board of the county in which the student resides and the board to which the student wishes to be transferred."). For a discussion of which version of the statute is applicable to this case, see *infra* Section III. A. of this opinion.

nary and permanent injunctive relief and a declaratory judgment against the Marion County Board to prevent that Board from continuing to provide bus transportation services to students residing in Taylor County but attending school in Marion County. The Taylor County Board complained that, beginning with the 2001–2002 school year, the Marion County Board established one or more new school bus stops within the boundaries of Taylor County for the purpose of transporting students residing in Taylor County to schools located in Marion County. It is undisputed that the students being transferred included students who had received authorization from both County Boards of Education to attend school in Marion County, as well as students who had not obtained such authorization and were, thus, improperly enrolled in Marion County Schools.

The Taylor County Board's request for temporary injunctive relief was denied. Thereafter, the parties jointly moved that the legal question presented by this case be certified to this Court. After determining that a certified question was proper, the circuit court formulated the following question:

> May the Marion County Board of Education, absent an agreement with the Taylor County Board of Education, establish bus stops within Taylor County to provide bus transportation to Taylor County resident students who have received authorization from both the Taylor County and Marion County Boards of Education to attend school in Marion County?

The circuit court answered this question in the affirmative. Noticeably absent from this certified question is any reference to Marion County's admitted practice of busing Taylor County resident students who had not received proper authorization to attend school in Marion County. The circuit court omitted this class of students from the certified question as there is no question of law regarding Marion County's authority to transport them. Indeed, the circuit court explained that Marion County was clearly without authority to bus students who had not obtained the proper authorization:

Both parties agree there are a number of Taylor County resident students attending school in Marion County who have not received transfer authorization from the Taylor County Board of Education, but who are being transported by bus from within Taylor county by the Marion County Board of Education. The plaintiff asserts, the defendant admits, and the court finds the Marion County Board of Education is without legal authority to provide bus transportation within Taylor County to Taylor County resident students who are attending Marion County schools without authorization from the Taylor County and Marion County Boards of Education. Accordingly, the Plaintiff's request to include this issue as part of the question to be certified is hereby **DENIED**.

In addition, notwithstanding the circuit court's determination that Marion County did not have the authority to transport students who were not authorized by both county boards of education to attend Marion County schools, it refused to amend its earlier denial of Taylor County's request for temporary injunction to prohibit Marion County from continuing to transport those students without proper authorization. In this regard, the circuit court expressly found that "the potential for physical harm or emotional trauma to those children who would be immediately affected by such a modification of the Court's prior order outweighs any prejudice to [Taylor County]."

This Court accepted the certified question for review by order entered June 25, 2002.

## II.

### STANDARD OF REVIEW

It is well established that

> " '[t]he appellate standard of review of questions of law answered and certified by a circuit court is *de novo*.' Syllabus point 1, *Gallapoo v. Wal–Mart Stores, Inc.*, 197 W.Va. 172, 475 S.E.2d 172 (1996)." Syllabus point 2, *Keplinger v. Virginia Electric & Power Co.*, 208 W.Va. 11, 537 S.E.2d 632 (2000).

Syl. pt. 2, *Charter Communications v. Community Antenna Serv., Inc.,* 211 W.Va. 71, 561 S.E.2d 793 (2002).

## III.

## DISCUSSION

### A. *Law Applicable to Question Certified*

Before addressing the specific question certified in this case, we pause to first discuss the proper statutes to be applied to our resolution of the issue presented. There are two statutes that were relied upon by the circuit court in reaching its answer to the question certified: W. Va.Code § 18–5–16 (1949) (Repl.Vol.1999), and W. Va.Code § 18–5–13 (1997) (Repl.Vol.1999). Following the circuit court's certification of this matter, and this Court's acceptance of the certified question for review, amended versions of these two statutes became effective on July 1, 2002.

■ To determine which versions of the relevant statutes should be applied to this case, we must consider the nature of the action below. The law suit underlying this certified question seeks an injunction. It has been explained, in general, that:

> Injunctive relief is designed to meet a real threat of a future wrong or a contemporary wrong of a nature likely to continue or recur. Whether interlocutory or final, injunctive relief is ordinarily preventive or protective in character and restrains actions that have not yet been taken. It is generally not intended to redress, or punish for, past wrongs. Coercive in nature, injunctive relief is meant to restrain motion and to enforce inaction. To obtain injunctive relief based on past injury, the plaintiff must show a real and immediate threat that the injury will continue or be repeated. Accordingly, rights already lost

and wrongs already perpetrated cannot be corrected by injunction.

42 Am.Jur.2d *Injunctions* § 2, at 553–54 (2000) (footnotes omitted).[3] In the instant case, the Taylor County Board seeks an injunction to restrain the future act of continued busing of Taylor County resident students on Marion County school buses. Whether or not the Marion County Board has the authority to engage in the challenged busing practices depends upon the above referenced statutes.[4] "The granting of an injunction based on a statute is to be determined *by the statute in force when the relief is to be awarded.*" 42 Am.Jur.2d *Injunctions* § 2, at 555 (footnote omitted). In other words, when the relief sought in a law suit is injunction, the general rule against the retroactive application of statutes does not apply as the application of an intervening statute is not considered retroactive. The United States Supreme Court, in the course of discussing the presumption against statutory retroactivity, has explained that

> [e]ven absent specific legislative authorization, application of new statutes passed after the events in suit is unquestionably proper in many situations. When the intervening statute authorizes or affects the propriety of prospective relief, application of the new provision is not retroactive. Thus, in *American Steel Foundries v. Tri–City Central Trades Council,* 257 U.S. 184[, 42 S.Ct. 72, 66 L.Ed. 189] (1921), we held that § 20 of the Clayton Act, enacted while the case was pending on appeal, governed the propriety of injunctive relief against labor picketing. In remanding the suit for application of the intervening statute, we observed that "relief by injunction operates *in futuro,*" and that the plaintiff had no "vested right" in the decree en-

---

3. While, in general, an injunction may not be used to remedy a past wrong, it is recognized that "[i]n cases of necessity, ... or if serious hardship or injustice will result without injunction, courts have equitable authority to grant mandatory injunctions compelling a defendant to undo the wrong done, except as limited by statute or constitutional provision." 42 Am.Jur.2d *Injunctions* § 2, at 554 (2000) (footnote omitted).

4. This is so because

"[t]he Board of Education of a school-district is a corporation created by statute with functions of a public nature expressly given and no other; and it can exercise no power not expressly conferred or fairly arising from necessary implication, and in no other mode than that prescribed or authorized by the statute." Syl. pt. 4, *Shinn v. Board of Education,* 39 W.Va. 497, 20 S.E. 604 (1894).

Syl. pt. 7, *City of Huntington v. Bacon,* 196 W.Va. 457, 473 S.E.2d 743 (1996).

tered by the trial court. 257 U.S., at 201[, 42 S.Ct., at 75–76]. See also, *e.g.*, *Hall v. Beals*, 396 U.S. 45, 48[, 90 S.Ct. 200, 201–202, 24 L.Ed.2d 214] (1969); *Duplex Printing Press Co. v. Deering*, 254 U.S. 443, 464[, 41 S.Ct. 172, 175, 65 L.Ed. 349] (1921).

*Landgraf v. USI Film Prods.*, 511 U.S. 244, 273–74, 114 S.Ct. 1483, 1501, 128 L.Ed.2d 229 (1994). *See also Nielsen v. Stepping Stones Assocs., L.P.*, 930 F.Supp. 910, 911–12 (S.D.N.Y.1996) (quoting *Landgraf* and *Duplex Printing Press Co. v. Deering*, 254 U.S. 443, 464, 41 S.Ct. 172, 175, 65 L.Ed. 349 (1921)); *Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters*, 25 Cal.3d 317, 323, 158 Cal.Rptr. 370, 374, 599 P.2d 676, 680 (1979) (" 'Relief by injunction operates in futuro, and the right to it must be determined as of the date of decision by an appellate court.' " (quoting *American Fruit Growers v. Parker*, 22 Cal.2d 513, 515, 140 P.2d 23, 24 (1943), and citing *Kash Enters., Inc. v. City of Los Angeles* 19 Cal.3d 294, 306, 138 Cal.Rptr. 53, 562 P.2d 1302 (1977))); *Landolt v. Glendale Shooting Club, Inc.*, 18 S.W.3d 101, 105 (Mo.Ct.App.2000) ("Clearly, 'a permanent injunction based on a condition subject to change may be vacated or modified in order to avoid unjust or absurd results when a change occurs in the factual setting or the law which gave rise to its existence.' ... Because a permanent injunction acts *in futuro* and gives Plaintiff no vested right in the judgment of the trial court, there is no retroactivity bar to applying a new statute after the initial issuance of an injunction." (citations omitted)).

■ Based upon the foregoing authority, it is clear that the proper statutes to be applied in deciding the issue presented in this case, which involves the prospective remedy of injunction, are the statutes in effect at the time we render our decision. Consequently, we will apply the 2002 versions of W. Va. Code §§ 18–5–16 and 18–5–13 in reaching our decision in this matter.

*B. Answer to Question Certified*

■ Having determined that the 2002 versions of the applicable statutes should be applied to this case, our resolution becomes quite simple as the Legislature has plainly expressed its intention. Under W. Va.Code § 18–5–16:

(b) *Transfers between counties; legislative findings.*

(1) Transfers of students from one county to another may be made by the county board of the county in which the student desiring to be transferred resides. *The transfer shall be subject to the approval of both the board of the county in which the student resides and the board to which the student wishes to be transferred.*

This provision corresponds with W. Va.Code § 18–5–13(f)(1), wherein county boards of education are granted the authority to provide an adequate means of transportation to students residing in another county when the students have complied with the procedure for obtaining authorization to attend school outside of their county of residence:

The boards, subject to the provisions of this chapter and the rules of the state board, have authority:

(f)(1) To provide at public expense adequate means of transportation, *including transportation across county lines for students whose transfer from one district to another is agreed to by both boards as reflected in the minutes of their respective meetings,* for all children of school age who live more than two miles distance from school by the nearest available road; ....

Without question, providing an adequate means of transportation necessarily includes the establishment of bus routes and bus stops.[5] The question herein certified, however, specifically asks whether a county may provide adequate transportation across county lines, including establishing bus stops, *without first entering an agreement with the county in which the students to be transported reside.* To answer this question, consideration must be given to W. Va.Code § 18–5–13(f)(2):

---

5. The right of a county to establish bus stops, of course, may not be exercised in a manner that violates the constitutional rights of others. In

addition, we note that detailed regulations for the establishment of bus stops may be found at 126 C.S.R. § 92–2–VI–B (2000).

The boards, subject to the provisions of this chapter and the rules of the state board, have authority:

(f)(2) To enter into agreements with one another as reflected in the minutes of their respective meetings to provide, on a cooperative basis, adequate means of transportation across county lines for children of school age subject to the conditions and restrictions of subdivisions [(f)] and [(h) [6]] of this section;

Obviously, W. Va.Code § 18–5–13(f)(2) authorizes county boards to enter into agreements for providing adequate transportation to students across county lines. The Taylor County Board urges us to go a step farther and read into this statute a mandatory duty upon counties to enter into an agreement before transportation of transfer students across county lines may occur. We are unable to adopt the Taylor County Board's interpretation of this statute, however, as we find nothing in the language of W. Va.Code § 18–5–13(f)(2) even remotely indicating a mandatory duty upon counties to enter such agreements. Indeed, due to the plainly expressed language of the foregoing statutes, we are bound to apply their terms without interpretation.

" 'Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation.' Syl. Pt. 2, *Crockett v. Andrews*, 153 W.Va. 714, 172 S.E.2d 384 (1970)." Syllabus Point 4, *Syncor International Corp. v. Palmer*, 208 W.Va. 658, 542 S.E.2d 479 (2001).

Syl. pt. 4, *Charter Communications v. Community Antenna Serv., Inc.*, 211 W.Va. 71, 561 S.E.2d 793.

■ We do note, however, that the Taylor County Board has specifically complained of the Marion County Board's establishment of *new* bus routes and bus stops, particularly those that enter into Taylor County residential subdivisions. Admittedly, the interpretation letter issued by Dr. Stewart, the State Superintendent of Schools, concluded that the Marion County Board was not prohibited from transporting students, who of course

had obtained the requisite transfer approval, "on an *existing* Marion County bus route." (Emphasis added). We are puzzled by Superintendent Stewart's limitation requiring an "existing" route. We recognize that it may be merely a result of the manner in which the question to him was posed. Nevertheless, his interpretation was rendered prior to the enactment of the amended 2002 version of W. Va.Code § 18–5–13, and we have herein concluded that the 2002 version of W. Va.Code § 18–5–13 is unambiguous and not subject to interpretation. Consequently, though our traditional rule is that

" '[i]nterpretations of statutes by bodies charged with their administration are given great weight unless clearly erroneous.' Syl. Pt. 4, *Security Nat'l Bank & Trust Co. v. First W. Va. Bancorp, Inc.*, [166 W.Va. 775,] 277 S.E.2d 613 (1981)." Syl. Pt. 3, *Smith v. Board of Educ.*, 176 W.Va. 65, 341 S.E.2d 685 (1985).

Syl. pt. 1, *Smith v. Board of Educ. of County of Greenbrier*, 192 W.Va. 321, 452 S.E.2d 412 (1994), this rule simply does not apply in the instant case. We find nothing in the plain language of W. Va.Code § 18–5–13 limiting a county's exercise of its authority to provide adequate transportation to the use of only existing bus routes or stops. Where the legislature has not seen fit to impose such a limitation, it is not for this Court to arbitrarily create one. Nor do we think such a limitation would be advisable. Indeed, we believe that it is reasonable to expect that, over time, the location of the homes of students residing in one county while authorized to attend school in another may change. As these changes occur, modifications to bus routes and stops may become necessary in order for a county to exercise its authority to transport students across county lines in a manner that is safe for student bus passengers.

■ Based upon the forgoing discussion, we hold that, pursuant to W. Va.Code §§ 18–5–13(f)(1) and (2) (2002) (Supp.2002), a county board of education may unilaterally establish bus stops within another county to provide bus transportation to students who have received proper authorization from both

---

**6.** Subdivision (h) of W. Va.Code § 18–5–13 pertains to insurance against negligence.

county school boards under W. Va.Code § 18–5–16(b)(1) (2002) (Supp.2002) to attend school in the county providing the bus transportation.

 Finally, we note that during oral argument of the case *sub judice,* the Taylor County Board urged that, despite the statutory authority granted to counties to provide transfer students with adequate transportation across county lines without an agreement between the interested counties,[7] the clause contained in the form used by both counties to authorize a student transfer from one county to another prohibited each county from providing transportation to students whose transfers had been approved. We are not persuaded by this argument. As the Taylor County Board submits, its "REQUEST FOR STUDENT TRANSFER OUT–OF–COUNTY" form includes the statement that "The Taylor County Board of Education will not assume responsibility for transportation and/or any expenses relating to this transfer." However, this clause has not been violated as Marion County has voluntarily assumed the task of transporting transfer students from Taylor County to Marion County Schools, and there has been no allegation of any attempt to burden Taylor County with any responsibility for transportation or any costs related to approved transfers. To the extent that the transfer request form used by the Marion County Board contains a similar clause, the Taylor County Board is simply without standing to seek its enforcement. *Cf. Snyder v. Callaghan,* 168 W.Va. 265, 275, 284 S.E.2d 241, 248 (1981) ("The question of standing to sue is whether the litigant has alleged such a personal stake in the outcome of the lawsuit so as to present the court with a justiciable controversy warranting judicial resolution of the dispute.... In order to have standing to sue, a party must allege an injury in fact, either economic or otherwise, which is the result of the challenged action and show that the interest he seeks to protect by way of the institution of legal proceedings is arguably within the zone of interests protected by the

statute, regulation or constitutional guarantee which is the basis for the lawsuit.") (Internal citations omitted.).

## IV.

## CONCLUSION

For the reasons stated in the body of this opinion, we agree with the conclusions reached by the Circuit Court of Taylor County and answer affirmatively the question herein certified.

Certified question answered.

---

**7.** During oral argument before this Court, the Taylor County Board conceded that the 2002 amended statutes resolved the issue herein raised. In fact, counsel for Taylor County con-

fessed that he had anticipated the filing of a motion by the Marion County Board to dismiss this case as moot. No such motion was filed.